## HODGSON v. THE MARINE INSURANCE COMPANY OF ALEXANDRIA.

A general policy, insuring every person having an interest in the thing insured, and containing no warranty that the property is neutral, covers belligerent as well as neutral property.

In an action of covenant on a policy, it is no defence to say that the premium has not been paid, but is enjoined by a court of chancery.

A misrepresentation, not averred to be material, is no bar to an action on a policy. A misrepresentation, to have that effect, must be material to the *risk* of the *voyage.*

It is not necessary, in an action of covenant on a policy, that the declaration should aver that the plaintiff had abandoned to the underwriters.

ERROR to the circuit court of the district of Columbia. in an action of covenant upon a sealed policy, whereby the Marine Insurance Company of Alexandria, in consideration of seventeen and a half *per cent.* premium paid by the plaintiff Hodgson, for " *George F. Straas and others, of Richmond,*" covenanted with the plaintiff for the said " *George F. Straas and others, of Richmond,* as well in his own name as for and in the name and names of all and every other person and persons to whom the same did, might, or should appertain, in part or in all," to insure *eight thousand dollars* on the brig 'Hope " a prize vessel," lost or not lost, at and from her last port of lading in St. Domingo to a port of discharge in the Chesapeake. The vessel was valued in the policy at *ten thousand dollars.* The declaration averred the vessel to be of that value, and that in prosecution of the voyage insured she was seized by certain British vessels and carried into Jamaica, where she was libelled, condemned and sold, whereby she was totally lost. In one count of the declaration the vessel was averred to be the property of George F. Straas and Jeremiah Leeds, of Richmond, in the other it was averred to be the property of Leeds alone.

The defendants, after *oyer*, pleaded eight pleas. Upon the three first there were issues in fact.

The 4th plea, in substance, was, that the vessel, at the time of the capture and sale was the property of the enemies of Great Britain, and as such was captured, libelled, condemned and sold. That Richmond was the capital town of the state of Virginia, a *neutral* state. That Straas and Leeds were of Richmond, and citizens of Virginia, and were

known to be so to the parties to the policy at the time of insurance. That the insurance was made by the contracting parties upon the property of American citizens in which no belligerent subject or citizen was interested; and that at the time of insurance, capture, condemnation and sale of the vessel, there was open war between France and Great Britain.

HODGSON
v.
MAR. IN. Co

To this plea there was a demurrer, and the following causes were stated :

1. Because the plea alleges that the vessel was the property of the enemies of Great Britain, but does not show in particular who were the owners thereof.

2. Because the plea is double in this, 1st. That it tenders an issue upon the fact of its being enemies' property; 2d. That it was condemned as such; 3d. That the insurance was made upon the property of American citizens.

3. Because it alleges that the insurance was made upon the property of American citizens, which is matter of law, and not of fact.

4. Because, as the policy contained no warranty of neutrality, it is wholly immaterial whether the property was neutral or belligerent.

5. Because the plea is no answer to the plaintiff's declaration.

6. Because it admits Straas and Leeds to be owners of the property insured, and to be American citizens, and it does not state any other person or persons to be the owners thereof.

7. Because the defendants were estopped by the policy from alleging that the insurance was made upon the proptery of American citizens.

HODGSON
v
MAR IN Co.

The 5th plea, in substance, was, that it has always been, and is the rule and practice of the defendants, never to make an insurance upon a vessel beyond her reasonable and just value according to the representation and description given of her, especially as to her age, tonnage and equipment, which rule and practice were well known to the contracting parties at the time of the contract, at which time the plaintiff proposed to the defendants that the value of the vessel should be agreed in the policy to be ten thousand dollars; and that at the time of executing the policy, the plaintiff, to induce the defendants to execute it, thereby insuring to the value of 8,000 dollars upon the vessel, represented that she was " *about 250 tons burthen*," " and *from six to seven years old.*" That the defendants, *in consequence of that representation*, and placing full faith and credit therein, executed the policy. That the representation was untrue in this, that the vessel was not of two hundred and fifty tons burthen, but *less than one hundred and sixty-five tons* burthen, and was not from six to seven years old at the time of the representation, but much older, viz. more than eight and a half years old. That the vessel was not of the value of eight thousand dollars, but of the value of 3,000 dollars only. That the misrepresentation respecting the age and tonnage of the vessel induced the defendants to execute the policy, whereby the value was agreed to be ten thousand dollars, and whereby insurance was made to the amount of 8,000 thousand dollars; " *and so the said deed is void as to them; and this they are ready to verify.*"

To this plea also there was a demurrer, and the following causes were stated:

1. Because the plea does not aver the misrepresentation to be material.

2. Because it is not alleged to have been fraudulently made.

3. Because the matter of the plea is not sufficient to annul or make void the policy.

4. Because the misrepresentation alleged is not of a definite fact; but that the vessel was of *about 2.* tons burthen, &c.

5. Because the plea is double in this, that it puts in issue the custom of the defendants, the representation touching the vessel, the age, the tonnage and the value of the vessel.

6. Because the defendants are estopped by the policy from averring that the vessel was of less value than 10,000 dollars.

The 6th plea was like the 5th, except that the averment respecting the rule and practice of the defendants was omitted, and that it contained an averment that the difference between the true and the represented age and tonnage of the vessel " *was material in regard to the contract of insurance,*" in the policy set forth; and so the policy was void as to them.

To this plea the plaintiff, protesting that the vessel was seaworthy, and that he did not knowingly and fraudulently state any misrepresentation, and admitting that the vessel was of less than 165 tons burthen, and was eight and a half years old, replied, that the difference between the true and the represented age and tonnage of the vessel, was not material *in regard to* the seaworthiness of the vessel, and her ability to perform the voyage insured, and did not increase the probability of loss by means of any of the risks insured against, but was altogether immaterial in regard to those risks.

The rejoinder of the defendants set forth their rule and practice as stated in the 5th plea; and averred that the misrepresentation induced and deceived the defendants into the agreement as to the value of the vessel, and as to the sum insured, and that the sum insured was more than double the value of the vessel, and so the defendants say that the difference between the true and the represented age and tonnage of the vessel was material.

To this rejoinder the plaintiff demurred, and sta-, ted causes of demurrer nearly like those to the 5th plea.

The 7th plea was, in substance, that the vessel was in part owned by one Alexander Burot, a French citizen, and an enemy of Great Britain, and that this fact was not disclosed to the defendants at the time of executing the policy.

To this plea there was a general demurrer.

The 8th plea was, in substance, that the plaintiff had not paid the premium, but had obtained a perpetual injunction from the court of chancery in Virginia, against the defendants, to prevent the recovery thereof.

To this plea also there was a general demurrer.

The judgment of the court below was in favour of the defendants on the demurrer to the 6th plea, and in favour of the plaintiff upon all the other demurrers.

*Swann,* for the plaintiff in error.

It is a sufficient answer to the 4th plea, that the policy is general; it contains no warranty of neutrality, and therefore covers belligerent as well as neutral property. 1 *N. Y. T. Rep.* 230. 238. 243. 2 *Emerig.* 460. *Doug.* 16. *Marsh.* 286.

The objections to the 5th plea are,

1. That no misrepresentation touching the subject of a sealed contract is sufficient, in a court of law, to set it aside.

The insurance cases against incorporated companies in England show that an equitable defence may be made in that country under the statutes. All other cases upon insurances are cases of simple contract.

This question then depends upon the general prin- HODGSON
ciples of the common law. By that law a misre- v.
presentation touching the subject of a sealed contract MAR. IN. CO.
was not pleadable against that contract.

It is true that any fraud in the execution of an
instrument which will authorize the plea of *non est
factum*, may be relied on at law. 1 *Burr.* 391. So
you may show that the consideration of a deed is
unlawful, as in the cases of usury, gaming, simony,
&c. But this plea shows no fraud, nor unlawful
consideration. It relies merely upon a mistake
which goes only to a part of the subject matter of
the contract.

2. The misrepresentation set forth in this plea
would not be sufficient to vacate the policy, even if it
were a simple contract. The misrepresentation
must relate to the risk, and be material as it regards
the risk. All the cases speak a uniform language
upon this subject. *Marsh.* 334, 335. *Park*, 197.
204, 205. 1 *N. Y. T. Rep.* 237, 238. 245.

If the representation must be material in regard
to the *risk*, the plea is bad in substance; because it
does not show any facts which would increase the
risk, nor aver the representation to be material to
the risk.

3. As the misrepresentation relates to the value
of the vessel, and not to the risk of the voyage, the
defendants are estopped from alleging that the ves-
sel was worth less than the value agreed upon in
the policy.

4. In a valued policy the underwriter waives all
inquiry into any fact or circumstance that relates
to the value of the thing insured: and the extent
or amount of value in such a policy is altogether
immaterial. *Park*, 1. 109.

The 6th plea concludes by saying that the repre-

HODOSON
v.
MAR. IN. CO.

sentation was material in regard to the *contract of insurance.*

This averment is difficult to be understood. It might mean material as it regarded the amount insured, or material as it regarded the risk. If issue had been taken upon this averment, the jury might have decided that the representation was material as it regarded the amount insured ; and upon that ground the cause might have been lost. If the plaintiff had demurred to it, it might have been an admission that it was material to the risk. If the averment had been that it was material as to the amount insured, we should have demurred ; if it had been that it was material to the risk, we should have taken issue.

In this uncertainty it was necessary for the plaintiff to reply specially, tendering an issue as to the materiality of the representation in regard to the risk of the voyage. This issue the defendants refused to join, and have thereby explained their averment to be that the representation was material, not to the risk, but to the amount insured. In this point of view it is bad not only for the reasons alleged against the 5th plea, but because it neither shows nor avers the representation to be material in regard to the risk.

No falsehood or misrepresentation, not increasing the risk, is material. No misrepresentation touching the ability of the vessel to perform the voyage can be material if she is *seaworthy.* The law does not notice grades of seaworthiness ; and with regard to this point her age and tonnage were perfectly immaterial : and it was equally immaterial as to the value, because the value was conclusively fixed in the policy.'

*E. J. Lee* and *C. Lee*, contra, contended, 1st. That the expression " *of Richmond*" implied a warranty that the property was neutral, and the condemnation was conclusive evidence of a breach of that

warranty. 2dly. That the declaration was bad because it contained no averment of an offer to abandon; and, 3dly. That the misrepresentation, as stated, amounts to a fraud in law, and that fraud will vacate every kind of instrument; and that in all cases of insurance any misrepresentation material *to the contract* is fatal.

It is because it is a *valued* policy, that the misrepresentation as to the age and tonnage became material to the contract. It was a misrepresentation of those facts upon which a judgment was to be formed, of the value of the vessel. The defendants never would have agreed to fix that value, unless they had believed the representation of the plaintiff as to those facts. The misrepresentation induced the defendants to make a contract which they would not otherwise have made. It is unnecessary that the plaintiff should have known that he was misrepresenting the facts.

He undertook to represent the facts, and by so doing must take the risk of their truth, and the consequences of their falsehood.

The *materiality* was a question for the jury. Whenever the question of law is involved with the fact, the court may leave the whole to the jury.

The plea is not double. A misrepresentation may be in a variety of particulars necessary for the formation of a correct judgment as to the value.

The defendants are not estopped by their deed from alleging facts which show the mistake, or misrepresentation upon which the instrument was predicated; because if the deed be void the estoppel cannot exist.

If the goods of an enemy be insured as the goods of an ally, the policy is void. The only question on this point is, whether the vessel was insured as an American vessel.

HODGSON
v.
MAR. IN. Co.

The payment of the premium is for ever enjoined, and nothing can be more unjust than to compel the defendants to pay the loss.

The following authorities were cited by the counsel of the defendants. 1 *Rob.* 11. 13.   1 *Burr.* 397. *Shep. Touch.* 58, 59.  *Chitty on Bills,* 8, 9.   3 *Bro. Parl. Cas.* 525.  *Smith's Rep.* 289.  2 *P. Wms.* 154. 157. 220. 287.  *Marsh.* 339, 340. 348.  *Doug.* 260. *Marsh.* 199. 201. 586.  2 *Wils.* 347.  1 *Fonb.* 230. 5 *Com. Dig.* tit. *Pleader,* 2 *W.* 18.  3 *T. R.* 438. *Hayne* v. *Maltby.* 2 *W. Bl.* 1152.   5 *Co.* 129.  *Gilb. Ev.* 163.  2 *Vent.* 107.  *Bull.* 173.  1 *Mod.* 477.  1 *Wooddeson,* 207.  3 *Burr.* 1918.  *Carter* v. *Boehm. Pa.k,* 182.   1 *N. Y. T. Rep.* 229.  *Barnewall* v. *Church. Doug.* 260, 261, 262.  *M'Dowell* v. *Frazier.* 1 *W. Bl.* 593.  *Carter* v. *Boehm. Millar,* 57. *Park,* 209.  *Marsh.* 208, 209. 350.  *Stewart* v. *Dunlop.* 2 *East,* 452.  *Williamson* v. *Allison.* 4 *East,* 590.  *Haywood* v. *Rodgers. Marsh.* 540.  *Le Cras* v. *Hughes.* 3 *Cranch,* 281.  *M'Ferran* v. *Taylor & Massie.* 1 *Ves.* 213.  4 *Dall.* 250.  *Doug.* 96.  2 *Wils.* 352.  *Collins* v. *Blantern.* 1 *Vent.* 121.  *Doug.* 30. 2 *Wils.* 8.  *Long* v. *Jackson. Skin.* 327.

*Jones,* in reply, was directed by the court to confine his observations to the 5th and 6th pleas.

No fraud or covin is charged in either of those pleas ; the doctrines, therefore, respecting a sealed instrument being vacated by fraud, do not apply. The case depends upon the principles of the common law applicable to contracts under seal.

The 5th and 6th pleas are in substance the same; and if the 5th be bad, as the court below decided, the 6th must be bad for the same reasons.

There is no case in which a sealed instrument has been set aside on the grounds alleged in the plea. If the facts would not maintain an action of deceit, they will not avoid a contract under seal.  They cannot even be given in evidence.  It must be a

matter that goes to the *whole* contract, and shows it to be void *ab initio*. It must be an allegation of *fraud*, or of *illegal consideration*.

The case of *Hayne* v. *Maltby*, 3 *T. R.* 438. is the only one cited which bears upon the present. But there the contract was void *ab initio*, and the case was decided upon the principle of fraud. It is immaterial what the facts of the case were, or how slight the evidence of fraud was. It is the principle only which is to be considered.

In an action at law upon a sealed contract you cannot go into the question of consideration, but to show it *fraudulent* or *illegal*. 2 *Cro.* 4. *Chandler* v. *Lopus.* 1 *Com. Dig.* 184. 2 *East*, 446.

### February 24.

CUSHING, J. (*Marshall, Ch. J. not sitting in the cause*) delivered the opinion of the court,* as follows :

The insurance in this case being general, as well for the parties named as " for all and every other person or persons to whom the vessel did or might appertain," and containing no warranty of neutrality, belligerent as well as American property was covered by it. Some of the parties being described as *of Richmond*, does not necessarily imply that they all resided there ; but if they did, mere residence would not make them citizens; and even then, an express warranty was necessary, if it had been designed to run only a neutral risk. This is an answer to the 7th as well as to the 4th plea ; because there can be no undue concealment as to the parties interested, where the terms of the policy are so broad as to preclude the necessity, either of disclosing their names, or of inserting them in the instrument.

*Present, Cushing, Washington, Livingston and Johnson, justices.*

<div align="right">HODGSON<br>v.<br>MAR. IN. CO.</div>

Hodgson
v.
Mar. In. Co.

The eighth plea is also bad. The defendants acknowledge, under seal, to have received a consideration of 17 1-2 *per cent.* for the insurance they made, which it appears was secured by a note, the amount of which was to be deducted from the sum to be paid for a loss, if any happened. On the face of the instrument, then, a valid consideration, if that be necessary, is stated, and if the note be never paid it cannot vacate the contract, or be relied on as a defence to an action on it. This court knows not why a court of equity has been applied to for an injunction. Its proceedings, therefore, can have no influence on the present suit, for notwithstanding its interposition in the way mentioned in this plea, the defendants cannot be deprived of the right they have reserved of deducting the amount of premium from whatever sum they may have to pay for the loss that has occurred.

Without deciding whether a material misrepresentation, not fraudulent, can be pleaded in avoidance of a sealed instrument, the court thinks there is no fact disclosed by either the fifth or sixth plea, which could vacate an insurance were it only a simple contract. In no part of the 5th plea is the misrepresentation alleged to be material. It is only to be inferred that it had some influence (but to what degree does not appear) in prevailing on the defendants to agree to so high a valuation. It will hardly, however, be insisted, that every over-valuation, however inconsiderable, or however innocently produced, will annul a contract of this nature. It would seem more reasonable, to let mistakes of this kind (if they are to have any operation at all) regulate the extent of recovery, and not deprive the party of his whole indemnity: for if an extravagant valuation be made, an underwriter cannot reasonably ask to be relieved beyond the excess complained of. The allegation that the vessel was worth, when insured, only 3,000 dollars, is also very unimportant, it being nowhere stated that the plaintiff represented her to be worth more, but only proposed that her value in the policy should be agreed

at ten thousand dollars. Now although she might
not in fact have been worth this sum, it is impossi-
ble for the court to say that this difference was pro-
duced entirely by the mistake which was made in
her age and tonnage. This would be to say that
a difference of a year or two in the age, and of fifty
or sixty tons in the burden of a vessel, must, in all
cases, have the same effect on her value; a conclu-
sion which, on investigation, would be found very
incorrect. Nor, if it appeared on trial that her
actual worth were no more than 3,000 dollars, would
it necessarily avoid the contract, or restrict the
damages to that sum; for she may, notwithstanding,
have fairly cost her owners the whole amount of her
valuation; who, in that case, would have honestly
represented her as worth 10,000 dollars.

But a more fatal objection to this plea is, that
the misrepresentation relied on is not stated to have
been material to the risk of the voyage; and yet
the only cases in which policies have been avoided
for innocent misrepresentations are those in which
the matter disclosed or concealed has affected the
risk so as to render it different from the one under-
stood at the time, and on which the premium was
calculated.

Most of the remarks on the 5th apply also to
the 6th plea: for although it be here alleged that
the misrepresentation was material " in regard to
the contract of insurance," it should have been sta-
ted in what particular, that it might appear whether
the *risk run* were at all affected by it.

An objection is made to the declaration, but not
much relied on, that no abandonment is averred to
have been made. In covenant such averment can-
not be necessary. If it be proved on the trial, it
will be sufficient.

The judgment of the circuit court on the 4th,
5th, 7th and 8th pleas must be affirmed with costs;
and its judgment in favour of the defendants on the

<div style="text-align: right">HODGSON<br>v.<br>MAR. IN. CO.</div>

6th plea reversed; and judgment on that plea be also rendered for the plaintiff.

Johnson, J. The difficulties in this case arise partly from the pleadings, and partly from the case presented by the pleadings.

This policy, having been effected by a corporation under its corporate seal, has been considered as imposing an obligation on the insured to bring *covenant* instead of *assumpsit*, as is usual on such contracts.

Thus the defendants have been obliged to plead specially; and the cause comes up on demurrer, which, of course, admits the case as made up on the pleadings.

Whether there is sufficient matter well pleaded why the plaintiff ought not to recover? is therefore the question before us.

I am of opinion that there is. I cannot for a moment suffer the sealing of the policy, or the form of the action, to impose any restriction upon the latitude of defence applicable to the contract of insurance. Such a doctrine would be fatal to every incorporated insurance company. I therefore maintain, that, in the action of covenant on a policy of insurance, every defence may be taken advantage of, in pleading, that could be introduced, in evidence, before a jury. It is an exceedingly inconvenient form of action for trying the merits of questions arising out of this species of contract, and I feel disposed, if possible, to diminish the inevitable difficulties, and the intricate and voluminous pleadings, which must grow out of this form of action, and to admit every facility which the rules of pleading will possibly sanction.

There are eight pleas filed to the present action. On the three first there are issues in fact, and the court below has given judgment on the remaining

five. I am disposed to concur in their decisions on each of these several pleas, although, perhaps, on some of them, for reasons not altogether the same with those by which they were influenced; but I shall confine my observations solely to the sixth plea, as that disposes of the case finally, if decided for the defendants, and has been the principal subject of the argument before this court.

The substance of this plea is, that the plaintiff misrepresented the age and tonnage of the vessel, whereby the defendants were induced to insure to a higher amount than they otherwise should; and concludes with averring, that the difference between the true age and tonnage of the vessel, and the represented age and tonnage, *was material in regard to the contract of insurance.*

The plaintiff replies that this misrepresentation was immaterial in regard to the *seaworthiness* of the vessel; *her ability to perform the voyage,* and the *other risks* insured against.

To me it appears that the plea presents the true turning point of the case, and that the replication draws towards questions very different from that which ought to control our decisions.

It is not on the doctrine of *seaworthiness* that a misrepresentation is held to vitiate the policy, because the insured is always held to guaranty the sufficiency of his vessel to perform the voyage insured. Nor is it an evident and necessary *increase* of the risk; but it is presenting such false lights to the insurer, as induce him to enter into a contract materially different from that which he supposes he is entering into. It is a rule of law introduced to protect underwriters from those innumerable frauds which are practised upon them in a contract which must of necessity be regulated almost wholly by the information derived from the insured.

I do not lay so much stress upon the misrepre-

sentation with regard to the age of the vessel; for that appertains much to her seaworthiness; but with regard to her size the misrepresentation was so enormous as leaves no doubt upon my mind that had the case been submitted to a jury, the court would have been bound to charge them in favour of the defendants. It had in its nature an immediate tendency to entrap the defendants into one of the most common and most successful snares laid for the unwary underwriter. To make it the interest of the insured rather to sink than to save his vessel. It can very well be conceived that an underwriter may be induced to insure a certain sum upon a certain vessel for a very moderate premium, when no premium would induce him to insure double that amount upon the same bottom. I am aware of a very considerable difficulty arising out of this case, viz. how we are to estimate the degree of misrepresentation with regard to tonnage which shall vitiate a policy? but it is a difficulty arising out of the *mode* in which we are drawn into a decision on the case, rather than out of the case itself.

If this question had been brought before a jury, the difficulty would have vanished; but shall the party lose the benefit of this defence because the pleadings have assumed such a shape as to force the court into a decision upon the point without a jury? I am of opinion that he ought not, if it can be avoided; an extreme case may be supposed in which the misrepresentation may be very inconsiderable, as of a single ton for instance; but, on the other hand, we may suppose an extreme case of a misrepresentation to the highest possible number of tons burden, say 1,000 tons; will it be said that, in the latter case, the misrepresentation would not avoid the policy?

From these considerations it seems to result that the court is driven to the necessity of deciding this case upon its intrinsic merits, and reserving its opinion upon successive cases as they shall occur. This necessity is forced upon us by the alternative either to decide that no misrepresentation, however gross,

of the size of the vessel will avoid a policy, or that any misrepresentation, however minute, will have that effect. It is to be hoped, in the mean time, that some statutory provision may be made, which will relieve the court from a similar embarrassment.