*395
 
 Thompson, Justice,
 

 delivered the opinion of the court. — This case is brought here on a writ of error to the circuit court of the United States for the Maryland district. The action is on a policy of insurance, dated the 20th March 1824, upon the schooner Frances, Seaward, master, valued at $2500, lost or not lost, on a voyage from Curagoa, or a port of departure in the West Indies, or on the main, to a port in the United States. The schooner sailed from Norfolk, on the outward voyage, in January 1824, and arrived and remained at Currgoa six or seven days, and proceeded thence to Carthagena, where she arrived on the 15th of February following ; and having taken in a return-cargo, j>roceeded on her return-voyage to Norfolk; and after being at sea about twenty hours, she encountered a very heavy' gale of wind, and received such injury that it was deemed necessary to return to Carthagena. The master reported the vessel to the American consul, who ordered a survey to be held upon her ; and she was afterwards sold by the consul to Thomas Evans for $140, who purchased the schooner in his own name ; but it was understood that Captain Seaward was to be concerned with him ; and he furnished the money to buy her ; and Seaward afterwards sold her to Palmer, for upwards of $200, who repaired her and returned with her to the United States. ,
 

 Upon the trial, several bills of exception were taken on the part of the defendants in the court below, and who are the plaintiffs here; upon which bills of exception, are presented the questions brought into this court for review. The first question relates to the admissibility, as evidence, of the *deposition of Thomas Evans, taken,
 
 ex parte,
 
 before the mayor of ^ ^ Norfolk. In the caption of the deposition, the witness is stated to >- be a resident of the borough of Norfork. And the mayor, in his certificate, states, that the reason for taking his deposition is, that the witness lives at a greater distance than one hundred miles from the place of trial, to wit, “in the said borough of Norfolk.” It was admitted, that the borough of Norfolk is more than one hundred miles from the place of trial; but the objection was, that no
 
 subpoena
 
 for this witness had been issued, nor any evidence, out of the deposition, produced at the trial, to show his residence, or inability personally to attend the trial. These were the particular objections taken at the trial ; but on the argument here, a broader ground has been assumed : that no
 
 ex parte
 
 deposition, taken out of the district where the trial is had, is admissible ; but that the testimony should be taken on a commission issued for that purpose. We think neither of these exceptions sufficient to exclude the deposition. In support of the latter objection, the case of
 
 Evans
 
 v.
 
 Hettick,
 
 3 Wash. C. C. 417, has been relied on, and which would seem to sustain the objection. Mr. Justice Washington does there say, that the act of congress must be so construed as to confine its operations to depositions taken within the district, when the witness lives more than one hundred miles from the place of trial; but when a witness lives out of the district, and more than one hundred miles from the place of trial, his deposition, if taken, must be under a commission. '
 

 We think, however, that this is not the true construction of the act of congress. (1 U. S. Stat. 89.)
 
 [1]
 
 It declares, that when the testimony of any
 
 *396
 
 person shall be necessary in any civil cause depending in any district, in any court of the United States, who shall live at a greater distance from the place of trial than one hundred miles, &c., the deposition of such person may be taken
 
 de bene esse,
 
 &c. The language here used is general, and is not certainly, in terms, confined to depositions taken within the district where the court is held. And if the provision was intended for the convenience of parties, it applies equally to depositions of witnesses living without, as to those living within the district, at a greater distance that one * hundred miles from the place of trial; and all the *dangers supposed J to arise from the taking of
 
 ex parte
 
 evidence, apply with equal force to the one case as to the other. It is said, however, that the act declares the deposition may be taken
 
 de bene esse,
 
 and if allowed in cases whore the witness lives out of the district, it necessarily becomes absolute, as the law stood in the year 1789 ; because a
 
 subpoena
 
 could not be issued in a district other than where the court was sitting. But no such consequence is perceived by the court to follow. The permission to take the deposition of a witness, on account of his distant residence, is connected with a number of other cases where the deposition may be taken : as when the witness is bound on a voyage to sea ; or about to go out of the United States ; or out of such district; and to a greater distance from the place of trial than as aforesaid, before the time of trial; or is ancient or very infirm ; the deposition may be taken
 
 de bene esse.
 
 In all these cases, except where the witness lives at a greater distance than one hundred miles, it will be incumbent on the party for whom the deposition.is taken, to show at the trial, that the disability of the witness to attend personally continues ; the disability being supposed temporary, and the only impediment to a compulsory attendance. The act declares, expressly, that unless the same (that is, the disability) shall be made to appear on the trial, such deposition shall not be admitted or used in the cause. This inhibition does not extend to the deposition of a witness living at a greater distance from the place of trial than one hundred miles ; he being considered permanently beyond a compulsory attendance. The deposition is such case may not always be absolute for the party against whom it is to be used may prove the witness has removed within the reach of a
 
 subpoena,
 
 after the deposition was taken; and if that fact was known to the party, he would be bound to procure his personal attendance. The
 
 onus,
 
 however, of proving this would rest upon the party opposing the admission of the deposition in evidence. It is, therefore, a deposition taken
 
 de bene esse.
 

 It was sufficiently shown, at
 
 least, primé facie,
 
 that the witness lived at a greater distance than one hundred miles from the place of trial. This was a fact proper for the inquiry by the officer who took the deposition, and he has certified that such is the residence of the witness. In the case of *6181
 
 Bell v. *Morrison,
 
 1 Pet. 356, it is decided, that the certificate of the -* magistrate is good evidence of the facts therein stated, so as to entitle the deposition to be read to the jury. It was not necessary to issue a
 
 subpoena.
 
 It would have been a useless act. The witness could not have been compelled to attend personally. By the act of March 2d, 1793 (U. S. Stat. 335),
 
 subpoenas
 
 for witnesses may run into districts other than where the court is sitting, provided the witness does not live at a greater distance than one hundred miles from the place of holding the court.
 

 
 *397
 
 The other exceptions arise upon the instructions given by the court, upon the prayers of the parties, respectively. After the testimony had been closed, each party submitted to the court several prayers, upon which the instruction of the court was requested, and the record then states as follows : “ Upon which prayers of the plaintiffs and defendants, respectively, the court gave the opinions, and instructions and directions, to the jury, following :
 

 “ 1. That if the jury find from the evidence, that the damage done to the schooner Frances, by any perils of the sea, on the voyage insured, could not be repaired, without an expenditure of money to an amount exceeding half her value at the port of Carthagena, after such repairs, then such damage constitutes a total loss, and the plaintiffs are entitled to recover.
 

 “ 2. That if the jury find from the evidence, that Captain Seaward was a man of competent skill in his profession, and that before he sold the schooner Frances to Palmer, in the manner stated in the testimony, he used due and proper diligence to ascertain whether a sale was necessary, and for the interest of the concerned ; and if upon the information so obtained, and the circumstances known to him at the time, after due and diligent inquiry, it was absolutely necessary, and for the interest of the concerned, that the vessel should be sold ; and that a prudent and discreet owner, placed in like circumstances, would have come to the same conclusion, and sold the vessel in like manner ; and if from all the circumstances of the case, the jury should be of the opinion, that the sale was justifiable ; that then the plain tffs arc entitled to recover.
 

 “ On the prayers of the defendants, the court’s directions were as follows : 1. *That the plaintiffs arc not entitled to recover for a total loss, p ^ unless the sale at Carthagena was in consequence of urgent and inevi- L table necessity ; that no necessity will justify a sale by the master, unless it be urgent and inevitable ; in other words, justifiable. 2. That in weighing this necessity, the fact of the sale having been made, as disclosed by the testimony, is not to be conclusive, but the necessity is to be tested by a con-1 «deration of all the circumstances. 3. That if the jury shall find from the evidence, that the damage which had been sustained by the vessel, at the time she put back to Cathagena, was of trivial amount; that this damage could have been repaired at Cathagena, for a small sum, and the vessel thus enabled, after a short delay, to proceed on the voyage insured, and that the • master had the funds to make the necessary repairs ; and if they shall be of * opinion, that it was not such a case of urgent necessity as to justify the sale ; then the plaintiffs are not entitled to recover for a total loss, but can ; recover only for a partial loss, according to the circumstances of the case. ' 4. The court are of opinion, that the abandonment was sufficiently made in ‘ this case.”
 

 In considering the exceptions taken to the opinion and direction of the court, we think, from the manner in which the prayers
 
 were
 
 presented, and the instructions given, they may well be considered together, as one entire direction to the jury, and not as a separate instruction upon each prayer; and this is the manner in which they have been treated on the argument at the bar.
 

 The question arising upon the first instruction relates to the place where the value of the vessel was to be ascertained, in order to determine whether
 
 *398
 
 there was a total loss. The court instructed the jury, that if the vessel could not have been repaired, without an expenditure exceeding half her value at the port of Cathagena, after such repairs, it constituted a total loss. This direction we think entirely correct. It was not denied, but that the cost of repairs must be ascertained at that place. But it is said, the value of the vessel, after such repairs, should be determined by the value in the home port, or in the general market; as the injury might occur in a place *6° * where the vessel would not be salable, and the property might be
 
 ‘
 
 sacrificed. It is true, this may occur; but it is a circumstance incident to the risk assumed by the underwriter; and any other rule would be in many cases impracticable. The purpose for which the value is to be ascertained is, to determine the right to abandon ; and a delay in doing this might be considered as waiving the abandonment ; and the value at the time the injury happens must necessarily be the rule by which that right is to be decided. No case has been referred to, or has fallen under the notice of the court, intimating the distinction here set up ; and we do not think it warranted by the general principles of insurance law. The rule laid down in the books is general, that the value of the vessel at the time of the accident, is the true basis of calculation. 3 Kent’s Com. 277. And if so, it necessarily follows, that it must be the value at the place where the accident occurs. The sale is not conclusive with respect to such value. The question is open for other evidence, if any suspicion of fraud or misconduct rests upon the transaction.
 

 The other questions arising upon the instructions relate to the sale of the vessel, and the sufficiency of the abandonment. As a general proposition, there can be no doubt, that the injury to the vessel may be so great, and the necessity so urgent, as to justify a sale. There must be this implied authority in the master, from the nature of the case. He, from necessity, becomes the agent of both parties ; and is bound, in good faith, to act for the benefit of all concerned ; and the underwriter must answer for the consequences, because it is within his contract of indemnity. This was the doctrine in the case of
 
 Mills
 
 v.
 
 Fletcher,
 
 1 Doug. 231 ; and which has been repeatedly sanctioned by the later decisions, both in England and in this country. It is a power, however, that is to be exercised with great caution, and only in extreme cases. It is liable to great abuse ; and must, therefore, in the language of some of the cases, be carefully watched. The difficulty in all these cases consists principally in the application of a rule to a given case, and not in determining what the rule is. It was not denied by the counsel for the plaintiffs in error, that in cases of extreme and urgent necessity, the master has the power to sell, if he acts in good faith, and the circumstances .¡, , *are such that a jury will find the necessity existed. All the circum- -* stances must be submitted to the jury, and they must find both the necessity and good faith of the master, in order to justify the sale. Necessity and good faith must concur; and the necessity is not to be inferred from the fact of sale in good faith, but must be determined from other circumstances. 4 Eng. C. L. 275 ; 7 Ibid. 386 ; 1 Ibid. 375 ; 2 Pick. 261 ; 5 Esp. 67.
 

 The complaint on the part of the plaintiffs in this case is, that the court placed the right to sell upon the good faith of the master, and the existence of the necessity, according to his opinion. And the second instruction on
 
 *399
 
 the prayer of tbe plaintiffs below, if standing alone, would be open to this interpretation ; and if so, would be erroneous. The professional skill, the due and proper diligence of the master, his opinion of the necessity, and the benefit that would result from the sale, to all concerned, would not justify it; unless the circumstances under which the vessel was placed rendered the sale necessary, in the opinion of the jury.
 

 But whatever ambiguity may appear in this instruction, standing by itself, it is entirely removed, when taken in connection with those given upon the defendant’s prayers’. The jury were explicitly told, that the plaintiffs were not entitled to recover for a total loss, unless the sale was in consequence of urgent and inevitable necessity, and that the fact of sale was not conclusive ; but that the necessity must be tested by a consideration of all the facts, as they existed at the time ; that if the damage sustained was of trivial amount, and could have been repaired at Carthagena for a small sum, and with little delay ; and that if, in their opinion, it was not such a case of urgent necessity as to justify the sale; then the plaintiff was not entitled to recover for a total loss. This instruction is according to the defendant’s prayer; except that the court was requested to instruct the jury, that the fact of sale was to have no influence, but that the necessity was to be tested solely by the facts, as they existed anterior to the sale. We think, the instruction, although not in the terms of the prayer, yet, when connected with the other instructions, is substantially according to the prayer. For the jury were told, in terms, that the plaintiffs were not entitled to recover for a total loss, unless the sale was the consequence of urgent and inevitable necessity. ^Whether the evidence was sufficient to warrant the find-
 
 ^
 
 ing of the jury, is a question that cannot arise here, upon this bill of L exceptions.
 

 The only remaining inquiry is, whether there was a sufficient abandonment proved ? There is some diversity of opinion among the elementary writers, and in the adjudged cases, as to what will constitute a valid abandonment. It seems, however, agreed, that no particular form is necessary, nor is it indispensable that it should be in writing. But in whatever mode or form it is made, it ought to be explicit, and not left open as matter of inference from some equivocal acts. The assured must yield up to the underwriter all his right, title, and interest in the subject insured. For the abandonment, when properly made, operates as a' transfer of the property to the underwriter, and gives him a title to it, or what remains of it, so far as it was covered by the policy. 3 Marsh. Ins. 599 ; Phil. Ins. 447, and cases there cited.
 

 The evidence in this case to support the abandonment consists of the correspondence between the parties, and the documents accompanying the same. On the 1st of May 1824, the plaintiffs wrote to the defendants as follows : “We are sorry to have to forward to you protest and surveys of the schooner Frances, insured with her cargo in your office. Captain Seaward arrived yesterday in the schooner Enterprise. We had before seen, by an arrival at Charleston, from Carthagena, that the Frances had been condemned, but were ignorant, until now, of the cause. By the next steamboat, we shall forward you a statement of the loss, with the necessary vouchers.” The protest inclosed to the underwriters contained the following clause : “I, the said consul, at the request of the said master, Joseph Sea
 
 *400
 
 ward, do hereby intimate, declare and make known to the underwriters of the said schooner Frances, and to the underwriters upon her cargo, that the said master, for himself, and in behalf of the owners of the said schooner Frances, and her cargo, doth abandon, cede and leave to them, the said underwriters, and to each and every of them, all his the said master’s, and theirs, the said owners’, right, title, interest, profit, property, claim, demand and produce of and in the said schooner Frances, and her cargo, and to the *6231 tac^e> apparel and furniture of the said schooner; and *that the aforesaid master doth claim, on behalf as aforesaid, reimbursement for the same as a total loss, &c.” The receipt of this was acknowledged by letter of the 4th of May ; and saying, that the further proofs of loss, on arrival, should receive immediate attention. On the 5th of May, the further proofs, and a statement of the loss, were forwarded to the underwriters : the receipt of which was acknowledged by letter of the ith of May ; in which the underwriters say, they have resolved to take time to consider about the adjustment of the loss.
 

 This correspondence, independent of the protest, leaves no doubt as to the intention and understanding of the parties with respect to the abandonment. This would, however, be matter of inference only. But the protest is direct and explicit, both in form and in substance. It is said, however, that this was an unauthorized act. It is true, no authority is shown from the assured to the master to make the abandonment; and had it been communicated direct from the master to the underwriters, the objection would apply with full force. But this protest, containing the abandonment, was communicated to the underwriters, by the plaintiffs. It became thereby their act, adopted and ratified by them, and must have the same legal effect and operation, as if it had originated with the assured themselves, and constituted a valid abandonment.
 

 This renders it unnecessary for the court to express any opinion upon the question made at the bar, whether any abandonment was necessary in this case. It may not, however, be amiss, to observe, that there is very respectable authority, and that, too, founded upon pretty substantial reasons, for saying, that no abandonment is necessary,where the property has been legally transferred by a necessary and justifiable sale. 2 Pick. 261, 265. The judgment of the circuit court is affirmed,with six per cent, damages, and costs.
 

 Judgment affirmed.
 

 [1]
 

 See Allen
 
 v.
 
 Blunt, 2 W. & M. 136, where Judge Woodbury says, the opinion of Judge Washington is founded on the soundest reasons, though the decision of the supreme court was the other way.