Mr. Justice Walker delivered the opinion of the Court. At the outset of this case, we are called upon to review the decision of the Circuit Court in a matter of practice. It has, heretofore, been decided by this Court that it will not reverse the decision of the Circuit Court, nor restrain the free exercise of a sound discretion, which is necessarily confided to courts of justice, unless in peculiar cases of palpable injustice, or where the legal rights of the parties have been invaded. (Bailey vs. Palmer, 5 Ark. Rep. 209. Magruder vs. Snapp, 4 Eng. 111.) The case of Norris vs. Kellogg, (2 Eng. 175,) is directly in point, in which it is expressly decided that allowing further time to plead is to be left to the discretion of the Circuit Court, unless exercised to the palpable prejudice of the party. These decisions we think well sustained by authority, and will be recognized in this case. It appears from the record that the Circuit Court commenced its term on the 3d Monday in April, 1846: that, on the 26th May, 1846, the defendant filed her plea of non assumpsit, to which issue was taken. Three days after, the defendant moved the Court for leave to file two pleas of limitation, but the Court refused to permit them to be filed (as is stated in the bill of exceptions) for the reason that the State was not entitled to the benefit of a plea of limitations. Whether the case had or had not been called in its regular order for trial on the docket, does not appear. If, in determining this question, we were limited to an investigation of the case upon the sufficiency of the reasons assigned by the Circuit Court for its opinion, it would make our decision to depend solely on the admissibility of that plea by the State at any time or under any circumstances. This Court is not, however, thus restricted, and will examine the whole record and decide the questions of law that arise independent of the particular reasons assigned by the lower Court, as decided by this Court in the cases of Dyer vs. Hatch, 1 Ark. 347. Cox et al. vs. Garvin et al., 1 Eng. 484. Hays vs. Pope County, 2 Eng. 237. The 53d sec. Dig. 804, expressly requires, in all cases where there have been thirty days service of the writ, that every plea to the merits shall be filed at or before the calling of the cause in its regular order: and so this Court decided in the case of Norris vs. Kellogg, (2 Eng. R. 175.) Up to that time, defendant had a right to file as many pleas as he might deem necessary for his defenee without leave. (Hickson vs. Weaver ad. &c., 4 Eng. 137.) After that time, he stood in default, and could only interpose additional pleas upon motion and leave. The 59th section has expressly provided for leaves of this kind, and provides u that, for good cause shown, and for the furtherance of justice, the Court may extend the time for pleading.” Regularly, motions for this purpose should set forth the reasons why the pleas were not filed within the time prescribed by the 53d section, and foe verified fey affidavit, and the pleas presented so that the Court might be enabled to judge whether they would tend to the furtherance of justice. The motion in this case sets forth no excuse whatever for having failed to plead within the time prescribed by law, nor is it verified. Had it been, however, the Court, under its power to determine whether the pleas tended to the furtherance of justice, might well have refused to receive them, because it was one entire motion asking to file two pleas of limitation. The Court could not be said to abuse its discretion for refusing to permit two pleas to be filed, one of which, in any event, might be stricken out on motion. (Doe vs. King's heirs, 3 How. (Miss.) R. 143.) The motion presented as one entire proposition will be decided as such. It will be remembered that this application was made three days after the general issue was filed and issue upon it. Several courts of high authority have expressly decided that a plea of the statute of limitations is not allowable after the general issue is formed. (6 Hill 225, Lovett vs. Cowman. 3 Marsh. R. 159, Bell vs. Morehead. 7 Cow. R. 401, Coil vs. Skinner. 1 Wend. 302, Hallagan vs. Goldin.) These decisions, however, are inapplicable to our statute, which allows pleas without distinction to be filed before the regular calling of the case for trial. They serve, however, to show that such pleas were discountenanced by the Courts insomuch that a stricter rule was established with regal’d-to them. But, in no case, have we found an authority where the defendant is in default, and must show that he has a meritorious defence, that the plea of limitations has been considered such. And although we are aware that Courts have recently held the plea of limitations in more favor than formerly, yet, in a case like the present, where the State is a party, and claims, in consideration of sovereign character, an exemption from the operation of the statute, and has seen proper to offer it in bar of the claims of her citizen, she should be held to the strict rule with regard to the time of pleading it. Without intending to be understood as intimating any opinion as to whether the plea is admissible on the part of the State, under any circumstances, we are clearly of opinion that the Circuit Court did not, in this instance, exceed the bounds of prudent discretion in refusing to allow said pleas to be filed. There was no error in permitting the plaintiff to read in evidence the two accounts stated. The character in which the Commissioner acted and the signatures were proven without objection. The accounts were, in themselves, strictly competent evidence to sustain the issue on the part of the plaintiff. The objection that there was a covenant which was higher'security, and that the plaintiff must resort to this higher security to recover, is doubtless correct in principle, but it is inapplicable to the state of case before the Court. It is in proof that the services set forth in the account stated were all the same identical services covenanted to be performed by the plaintifi, except the work on the roof, and the change as to the manner or style of executing a portion of the work on the inner walls. These were done by verbal agreement. It has been decided that, where part of the items in an account stated were done under a covenant, and the residue are for work or services disconnected with or not embraced within the covenant, assumpsit will well lie on the account stated. In the case of Foster vs. Alanson, (2 Term R. 480,) Ashurst, J., said: “Both parties, by agreement, consolidated the demand, and the defendant must thereby be taken to have given his consent to consider this as a new debt on an account stated. Besides, it is for the defendant’s benefit; and it is extraordinary that he should insist on being harrassed with two actions when one would suffice to recover the whole -.demand.” Bulles., J., in the same case, said: “ The account was not confined to matters relating to the partnership, but it includes other articles for which covenant will not lie. Therefore, when the defendant promised to pay the balance, there was an end to the covenant. And even if other articles had been introduced into the account but those relating to the partnership, I should still be of opinion that assumpsit would lie.” Such was also the opinion of the same Judge in the case af Moravid vs. Levy, (2 Term R. 483.) From these authorities, as well as from the reason and necessity of the case, we think we are warranted in saying that where the account consists of items, part of which may be recovered in covenant and the residue are not recoverable in such action, the plaintiff may maintain an action of assumpsit on an account stated for the recovery of the whole amount: and, from the evidence before us, this case properly falls within the rule. Nor is this the only reason why the plaintiff should not have been driven to a suit on his covenant. Upon examination of the covenant, it will be found to be the covenant of B. F. Pattie, and not of the State. The State neither seals nor executes by agent or otherwise. If the deed be only executed by the plaintiff and not by the defendant, the action must be in assumpsit. (1 Chit. Pl. (10 Amer. Ed.) 104. Story on Con. 197.) Nor can the endorsement on the back of the covenant bind the State, as will be evident upon even a slight examination of it. It is as follows: “ This agreement witnesseth, that I, Richard T. Jen: nings, have taken the within contract for painting the Public Buildings, with all its liabilities and restrictions, and am to receive the same pay for work done that B. F. Pattie would have received, and in the same manner. January 2d, 1839. RICHARD T. JENNINGS, [l.s.] SAML. H. HEMPSTEAD, [l.s.) Approved: Com. Pub. Buildings." J. S. Conway. In the first place, this agreement is made with no one: the State is not a party; she contracts on her part to do nothing. How, then, can covenant be maintained against her ? She neither signs nor seals the agreement. How can it be her covenant? The authorities are decided. Indeed, the very elements of a valid contract are wanting. “ A contract,” says Pothier, “includes a concurrence of intention in two parties.” This doctrine was recognized by this Court fully in the case of Pelham et al. vs. Gregg et al., (4 Ark. R. 143.) So, it has been held, that where the deed is signed by but one party, assumpsit is the proper action. (1 Ch. Pl. 104.) In Story on Contracts, (p. 197,) it is said: The general rule applicable to this subject is, that the principal will neither be personally bound by a specialty signed by his agent, nor capable of being sued thereon, unless it appears on the face of his deed, and unless it be made in his name: and if the agent should sign and seal it A B, for C D, it would be considered as his own deed and not the deed of his principal. The proper mode of subscribing an instrument as agent is, to sign the name of the principal first A B, and then add, “by his attorney, CD;” and unless the deed purport, on its face, to be the deed of the principal, it will be considered as the deed of the agent.” (Story ov Con. 198.) We are satisfied that this instrument was not the covenant of the State, and that, for the services rendered under it, assumpsit was the proper form of action. 1 Ch. Pl. 104. 6 Term R. 179. 1 Saund. Pl. & Ev. 110. The due execution of the accounts stated having been proved, they were legal evidence to sustain the issue on the part of the plaintiff, but not conclusive. The defendant might adduce evidence to prove a mistake in stating the account. (Chit. on Con. 654.) The papers, which were offered in evidence and rejected, had they been properly proven and connected with the settlement of the account stated, might possibly have conduced to prove such mistake. Where evidence is competent, it should be permitted to go the jury, whose province it is to weigh it in considering the facts before them. Slight circumstances, in themselves, when connected with other evidence, may become very important. Such evidence, however, to be admissible, must not only be legal in other, respects, but must be so connected with other circumstances and evidence as to show the relevancy. In 2 Phill. Ev. (Cow. & Hill's notes) 435, it is said: “ If the evidence be legal, if taken in connection with other facts, it ought to be proposed in connexion with those fact's, and an offer to follow the evidence proposed with proof of those facts at the proper time.” We have adverted to these rules because they are applicable to all that portion of the evidence offered by the defendant, and excluded by the Court during the examination of witness Stevenson, and from which we are fully authorized in sustaining the decision of the Circuit Court in regard to such evidence. The evidence of witness Hawldns, which was rejected, related to the admissions made by the plaintiff after he had transferred his interest in the accounts to Bettison, for whose use this suit is brought. These admissions, tending to prove a mistake in the settlement, would have been admissible had they been made before the plaintiff parted with the accounts. Such not being the case, the-evidence was properly rejected. Campbell & Cureton vs. Sneed, 4 Eng. 119. Although the defendant, under the issue, had a right to prove payment, and for that purpose might have interrogated the witness, his question should have limited the range of inquiry to the matter in issue, and at such time as if answered for the defendant, the answer would have tended to prove payment of the particular accounts in suit. This was not done: the question was general, as to all accounts and indefinite as to time. The payment to Jennings after the assignment to Bettison, and notice of that fact to the defendant, would not have been good. It appeared, however, that, in the further examination of the samé witness, he proved thevreverse of what the defendant had proposed proving by the witness. So that, in fact, (even had his question been proper,) it was subsequently answered; and therefore defendant has no cause to complain of having been deprived of the benefit of such evidence. Having thus reviewed the several objections urged by the plaintiff in error, to the judgment and decision of the Circuit Court upon the questions of law which arose in the progress of the trial upon the evidence, and from which it will be seen that there is no error in regard to these points, and consequently none in refusing to give the instructions asked by the defendant, if any further question could arise, it must relate to the verdict of the jury and the judgment of the Court upon it. It appears from the record that no exceptions whatever were taken in the Court below to the verdict; no motion made to set it aside for any cause; nor has it been assigned in this Court as error, that the jury found a greater amount of damages than they were warranted from the evidence in finding, thus involving a mere question of fact ascertained by the jury, whose province it was to weigh the evidence and decide upon it. We were of opinion, at the last term of this Court, and so decided, that we had no power to review such finding or to set it aside, unless the question had been presented here as error in the Circuit Court for refusing to sustain a motion for a new trial. The learned counsel who represented the plaintiff, presented a petition to the Court praying it to reconsider its opinion upon this point; which was granted, principally because the question was one of importance in practice, and had not been argued by counsel upon the first hearing. The re-investigation which we have made upon this point, aided as it has been by the research of counsel, fully confirms us in the correctness of the opinion then delivered. The principal ground relied upon for a reconsideration, is, we apprehend, based upon a misrepresentation of the record. It no where appears of record that the plaintiff abandoned any of the counts in his declaration. The statement in the bill of exceptions that such was the case furnishes no evidence whatever of that fact. The office of a bill of exceptions is to preserve the evidence of facts, which, in the ordinary course of proceeding in the Courts, would not otherwise appear of record in the case. (Lyon vs. Evans et al., 1 Ark. 360.) In the above case, the bill of exceptions referred to matters which, if existing, should have been of record, and others inconsistent with the record. The opinion of the Court was delivered by the then Chief Justice, who, after a full investigation of the scope and office of of a bill of exceptions, referring to and sustaining the opinion of the Court by the most reliable authority, in concluding his review of the question, said: “ By applying these tests to the bill of exceptions before us, it is manifest that almost every fact therein stated must be considered as forming no part of the record, and therefore be entirely disregarded.” This decision, we have no doubt, is correct. A bill of exceptions never was inten-tended to evidence matters which properly belong to the records of the Court. If a discontinuance of part or the whole cause of action was moved and sanctioned by the Court, the order of Court allowing it is the proper and only legitimate evidence of the fact, as much so as an order for a continuance, or to file, or strike a plea from the files, or any other direction or decision in the progress of the cause, and all are evidenced by the record. And when they do not appear of record, no mere statement that such order was made will be received as evidence to supply the record evidence itself. A bill of exceptions is only evidence of such facts as properly come'within its office and scope, and to permit it, in one instance, to supply the place of record evidence, is, in effect and principle, to substitute it for the record. We are sustained in these conclusions not only by the express-decision of this Court in the case of Lyon vs. Evans, but also by a decision of the United States Court: Zeller’s lessee vs. Ekert et al., (4 Howard, U. S. R. 297.) In that case, the Court said: “ So far as error is founded upon the bill of exceptions incorporated in the record, it lies only to exceptions taken at the trial, of the ruling of the law by the Judge, and to the admission or rejection of evidence. .(1 Bac. Abr. 779. Bull. N. P. 316.) Beyond this, we have no power to look into the bill of exceptions or to the writ of error, as it is the creature of the statute and restricted to the points stated. (13 Edw. 1 c. 31.) And only so much of the evidence given on the trial as may be necessary to present the legal questions thus raised and noted should be carried into the bill of exceptions. All beyond serves only to encumber the record and to perplex and embarrass both the Court and counsel.” . From these authorities, as well as an obvious propriety and necessity for their observance, we are not permitted to examine this case, as counsel seem to suppose, upon two, but on all the counts in the declaration. If the facts existed, as is assumed, (and of which we know nothing except from the record,) it was the duty of counsel, if they desired to avail themselves of any advantage from it, to have had such facts entered of record, or, if omitted, to have caused a nunc pro tunc entry to be made. This has not been done, and consequently it is a matter which (if existing) we can take no notice of. Returning, then, to the state of issue, and ’the facts of record, we find a declaration containing seven counts, varied to suit all the evidence, for work and labor, materials, or money, and two counts for accounts stated, with a general breach and damages at $3,000. The proof was conclusive as to $1,800, and there were also accounts produced and proven to the amount of several thousand dollars, which, however, as appeared from the same evidence, were settled by certificates with the exception of a balance of $1,102 50, which appeared, from the written admission of both parties, to have remained unsettled. There was also other evidence and other accounts produced on the trial, so as to leave it a matter of doubt what the true state of accounts was before the jury. We refer, in general terms, to the state of case thus presented, with no view of attempting to ascertain what the true state of accounts was, (with that we have nothing to do,) but simply to show that it was a case where, from the conflict of evidence and confusion of accounts, the jury were the proper judges of the facts and weight of evidence. If, however, the plaintiff in error was dissatisfied with the verdict; for instance, if, in his opinion, it was for a larger sum than' the evidence warranted, the party thus aggrieved should ■have moved the Circuit Court to set it aside and grant a new trial, and had that Court refused to do so, and the facts had been presented to us for consideration, it would then have become our duty to examine the evidence, and if the verdict should be found very decidedly contrary to the weight of evidence, so much so as to leave no doubt but that an intelligent, unbiased mind would have decided differently, the decision of the Circuit Court refusing such new trial would have been reversed and a new trial ordered. Unless, however, there has been an application made to the Circuit Court to set aside the verdict and grant a new trial, this Court has no power whatever to review the evidence, or in any manner disturb the verdict. This point was expressly decided in the case of Ringo vs. Field, 1 Eng. 48. Brockett vs. Brackett, 2 Howard 238. Minor & wife vs. Tillotson, 2 How. 392. Patapsco Ins. Co. vs. Southgate, 5 Pet. 621. In the case of Campbell vs. Patterson, (7 Vern. 88,) this question is investigated at length and with much ability by that Court. It is there held “ that no writ of error lies to re-examine a question of fact depending upon the evidence in the original suit, nor to re-examine a mixed question of law and fact. Hence, where the point depends upon evidence, and the injury is of a mixed character, a bill of exceptions is necessary to lay the foundation for a writ of error. And even where a bill of exceptions is allowed and error brought, the only legitimate subject of inquiry concerns the correctness of the legal rules adopted and the accurate application of them to the facts stated in the record. Even here no evidence is received, nor inquiry allowed upon evidence extraneous of the record, nor as to the sufficiency of the evidence to establish any fact, exeept so far as the legal tendency of the evidence is involved, or its sufficiency may be determined by abstract rules.” And, at page 90, the Court said: *l But, so far as the amount of damages is uncertain, depending upon evidence to be exhibited to the triers, it is very certain that their finding is conclusive, and cannot be re-examined by a writ of error. It would be repugnant to a writ of error and utterly inconsistent with the proceedings upon it to sustain it upon the suggestion that the jury had erred in the computation of damages.” And again, at page 91, the Court said: “We do not admit that we may be required, upon this proceeding, to re-examine the computation of a jury, or to correct the misprision oí a clerk in the Court below. That Court might either correct the error directly, or grant a new trial for a new assessment.” And it was held, in the case of Zeller's lessee vs. Eckert, (4 How. U. S. Rep. 298,) that “the Supreme Court have no concern, on writ of error, with questions of fact, or whether the finding of the jury accords with the weight of evidence. The law has provided another remedy for errors of this description, namely, a motion in the Court below for a new trial on the case made.” This Court, at its present term, has had occasion to review the principles in a greater or less degree involved in this question. In the case of Farrelly vs. Cross, an issue of nul tiel record was presented to the Court and decided; and, coming before us upon error, the question arose as to whether this Court could entertain error, for the reason that no motion had been made to set aside the finding of the Court. In that case, the Court took a distinction between trials before the Court and trials where the facts were submitted to a jury; and, in that case, it was held, as a general rule, that where the Court assumed the double office of deciding the law and the facts, or the facts influenced by its own peculiar views of the law, this Court will entertain error even though no motion is made to set aside such finding. But it must be observed that the error must be of such a decided and manifest cast, that this Court can with certainty lay its finger upon and point out such error: as in the case of Farrelly vs. Cross, where the evidence offered on the part of the defendant was wholly incompetent to sustain the issue for the defendant, and in other cases where the error is palpable. But, wherever the question turns upon the weight of evidence, making it a mixed question of law and fact, or simply of fact, the question must be presented upon bill of exceptions and assignment of errors, presenting, for the consideration of this Court, the questions of law which it is called upon to decide. This Court has no power to examine a mere question of fact decided by a jury upon the ground that the jury had decided contrary to the weight of evidence. To tolerate such a practice, would, in effect, be to destroy the right of trial by jury. At com-. mon law, such a thing was not known, nor could the decision of the lower Court be disturbed for refusing to set aside a verdict. Our Court, with a few others, against perhaps a majority of the State Courts, have allowed error to be entertained in cases where the verdict was so decidedly against evidence as to create a strong probability that improper influences, or gross ignorance, or inattention, had influenced the finding, and the Circuit Court had, upon application,, refused to set it aside. But we are aware of no decision which would sustain us in disturbing the present verdict. The party made no objection to it in the Court below, and has thereby precluded himself from objections to it here for the first time. We have not omitted to look into the authorities presented by the defendant in error as to whether the bill of exceptions, owing to the manner in which it was taken, properly brings before us the evidence upon which the jury formed their verdict. It is. very questionable whether the objection is not well taken. It is well sustained by the case of Evans vs. Lyons, (1 Ark. Rep.) It is unnecessary to determine that point, however, as it would not change our opinion. Finding no error in the record upon the questions of law therein presented for our consideration, the judgment of the Circuit Court must be affirmed.