Scott, J.
In order to have a clear apprehension and correct, solution of the question made in this case, it is necessary to understand what is meant by an abandonment; what are its legal effects, and what would be the legal rights of the parties, independent of the provisions of the policy on the subject of abandonment.
*The term 11 abandonment,” as used in policies of marine [208-insurance, and in the law regulating that subject, is a technical one.
“ An abandonment is an act on the part of the assured, by which *204 he relinquishes and transfers to the underwriters his insurable interest, as far as it is a subject of the policy, or the proceeds of it, or the claims arising from it.” Phil. on Ins. 382.
“ The abandonment can not transfer the interest of the assured any further than that interest is covered by the policy.” Arnould, 1159.
“ The abandonment, when properly made, operates as a transfer •of the property, to the underwriter, and gives him a title to it, or what remains of it, as far as it was covered by the policy.” 5 Pet. 622.
Such we understand to be the well-settled legal effect of an abandonment. It operates as a transfer to the underwriter of the property insured, only to the extent of the indemnity contemplated by the policy; and this limitation of its operation is not only sanctioned by the authority of the elementary writers and the general ■current of decisions, but has its foundation in equity- and sound principle.
Upon what principle of equity should the underwriter, in case of abandonment, take the wreck, not only of that which he has insured, and of which his contract binds him to pay the full agreed -value, but also of that which he has not insured, and for which he is in no event liable to pay ?
It would seem equitable — and in ordinary cases of insurance such is doubtless the law — that where an abandonment may be and is legally made, the wreck, or its proceeds, inure to the benefit of thoseVho bear the burden of the loss — to the underwriters in proportion to the parts by them severally insured, and to the owner 204] in proportion to *the part remaining uninsured, and as to which he is virtually his own insurer. The ground upon which the insurer takes the wreck is, that he pays the party assured for a total loss — and to the extent to which his contract binds him thus to pay, to the same extent, and no further, is he entitled to the proceeds of the wreck. His rights originate from his obligations, and ■can not be more than co-extensive.
But did the parties intend, by the clause in the policy out of which this controversy arises, materially to change'the legal rights •of the insurer and the assured, growing out of and incident to an abandonment ?
That clause is in these terms: “ In all cases of abandonment, the assured shall assign, transfer, and set over to said insurance corn *205 pany all their interest in and to the said steamboat, and every part, thereof, free of all claims and charges whatever.”
The right of the party assured to “ abandon ” in a proper case, seems here to be contemplated and strictly recognized; and yet, if we adopt the construction claimed by the plaintiff in error, the policy does not permit the making of a legal technical abandonment under any circumstances, but substitutes therefor a transfer, having an effect which the law does not attach to an abondonment.
That the “ claims and charges,” mentioned in this clause, were understood by the parties to refer, not to the interest of the party insured in the boat, but to mortgages or other liens held by other-parties against the -boat, is satisfactorily shown by the terms of the guaranty taken by the plaintiff in error from the defendants on the payment of the sum insured.
The construction claimed would, in cases of partial insurance, often prevent an abandonment, where the settled rule of law would authorize it, or would defeat that indemnity, which is the very ground and object of all legitimate insurance.
*A construction leading to such results, so vitally changing [205 the legal rights of the parties, and working apparent injustice, ought not to be adopted, unless required by clear and explicit language.
We think a different construction may be fairly given to the-clause in question — that it waá not intended to change the legal effect of an abandonment, which the framer of the policy may be-presumed to have understood, but to prescribe the form in which the transfer should be made to the underwriters of the interest which they derive by law from the abandonment, and to point out. the mode in which the intention to abandon should be unequivocally expressed.
The elementary writers tell us that “ no particular form of abandonment is prescribed, nor is the form material;” “ it has not been considered necessary, as a general rule, that it should be made in writing.” Phillips on Ins. 447.
In Chesapeake Insurance Co. v. Stark, 6 Cranch, 272, C. J. Marshall, giving the opinion of the court, said : “ The informality of the deed of cession is thought unimportant, because, if the abandonment was unexceptionable, the property vested immediately in the underwriters, and the deed was not essential to the rights of either party.”
*206 As no deed of cession, transfer, writing, or particular form is essential to an abandonment, doubts have sometimes arisen as to what will constitute a valid abandonment. To prevent all difficulty ■cr misunderstanding on this jooint, we may reasonably suppose was ■the object in requiring that the abandonment should be accompanied and evidenced by a formal assignment and transfer of the property insured. And the clause may have also been intended to provide that the abandonment should be general, embracing the whole subject-matter of the insurance.
Besides, we understand an abandonment to operate as a transfer 206] to the underwriter of the legal title to, and right *of disposal ■of what remains of the thing insured; and the formal assignment provided for in the clause under consideration, may reasonably have been intended simply to facilitate the sale of the wreck by the insurance companies, without discharging them from their legal liability to account to the party assured for his proportion of the proceeds. Such discharge can only be effected by language so clear and explicit as to leave no reasonable ground for misapprehension on the part of the insured.

Judgment affirmed.

Bartley, C. J., and Swan, Brinkerhoee, and Bowen, JJ., concurred.