### JEFFCOTT v. AETNA INS. CO.

District Court, S. D. New York.
Feb. 13, 1940.

Carpenter & Stevenson, of New York City (George C. Sprague, John Tilney Carpenter, and Nicholas J. Healy, 3d, all of New York City, of counsel), for libellant.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, George S. Brengle, Martin Detels, and Ezra G. B. Fox, all of New York City, of counsel), for respondent.

COXE, District Judge.

The respondent has filed exceptions to the first, second and third causes of action of the libel. It has also excepted to interrogatories Nos. 14 to 39, inclusive, attached to the libel.

The suit is brought to recover on two policies of marine insurance covering the yacht "Dauntless" belonging to the libellant. One of the policies was a hull policy, the other a disbursements policy. The yacht, while laid up and out of commission at New London, Connecticut, was severely damaged in the hurricane of September 21, 1938.

The libellant, after an examination of the vessel, concluded that she could not be salved and repaired except at an expenditure of more than 50% of her agreed value. He accordingly tendered abandonment to the respondent on September 29, 1938, and made claim for a constructive total loss under both policies. This tender was refused by the respondent. Later, the yacht was salved by the respondent and brought back to the dock in New London, where she had been before the hurricane.

The exceptions to the libel raise two questions, namely, (1) whether the libellant may recover for a constructive total loss under both policies on a showing that the probable cost of the salvage and repair of the vessel would exceed 50% of the agreed value, and (2) whether the act of the respondent in salving the vessel, and then failing to repair and tender her to the libellant, constituted a constructive acceptance of the libellant's abandonment.

The two policies on which the suit is based are both dated June 7, 1938, and each covers the period from June 24, 1938, to June 24, 1939.

In the hull policy, the yacht was valued at $240,000, and was insured for that amount against the usual sea perils. The policy provides as follows:

"The insured value to be taken as the repaired value in ascertaining whether the vessel is a constructive total loss".

"And it is expressly declared and agreed that no acts of the insurer or insured in recovering, saving, or preserving the property insured shall be considered as a waiver or acceptance of abandonment".

"Warranted by the assured that the within named vessel shall be laid up and out of commission at the Thames Shipyard, New London, Connecticut, during the currency of this policy".

The disbursements policy was for $80,-000, and provides as follows:

"Warranted free of all average and salvage charges being against the risk of the total or constructive total loss of vessel only. A total and/or constructive total loss paid by Underwriters on hull to be a total loss under this policy".

"The insured value to be taken as the repaired value in ascertaining whether the vessel is a constructive total loss".

"Warranted laid up and out of commission at the Thames Ship Yard, New London, Conn. during the currency of this policy".

"And it is expressly declared and agreed that no acts of the insurer or insured, in recovering, saving, or preserving the interest insured, shall be considered as a waiver or acceptance of abandonment".

The libel contains four separate causes of action. The first is for $240,000 for a constructive total loss under the hull policy. It incorporates the hull policy, states the facts with respect to the disaster and the tender and refusal of abandonment, and alleges that the cost of recovering and repairing the vessel would in all probability exceed 50% of the agreed value of $240,-000. The second repeats most of the allegations of the first, and then alleges that because of the unreasonable delays of respondent "in freeing and salvaging the 'Dauntless' after it had elected to do so,

and because of its failure to repair, restore to the condition she was in before said disaster and return her to the libellant within a reasonable time thereafter, respondent accepted libellant's abandonment of the vessel and is obligated to pay libellant the sum of $240,000.00". The third is for a constructive total loss under the disbursements policy. In the fourth, the libellant seeks reimbursement for his expenses "for the defense, safeguard and recovery" of the vessel, amounting to approximately $10,000.

■ 1. It is the settled American rule that, in the absence of a provision in the policy to the contrary, an assured may abandon and recover for a constructive total loss where the cost of recovery and repair would, in all probability, exceed 50% of the repaired value, or, if the policy so provides, 50% of the agreed value. Patapsco Ins. Co. v. Southgate et al., 30 U.S. 604, 5 Pet. 604, 8 L.Ed. 243; Bradlie and Gibbons v. Maryland Ins. Co., 37 U.S. 378, 12 Pet. 378, 9 L.Ed. 1123; Orient Mutual Ins. Co. v. Adams, 123 U.S, 67, 8 S. Ct. 68, 31 L.Ed. 63; Royal Exchange Assur. v. Graham & Morton Transp. Co., 7 Cir., 166 F. 32.

■ In both of the present policies the vessel was valued at $240,000; in both, there was a provision that the insured value would be "taken as the repaired value in ascertaining whether the vessel is a constructive total loss"; and both contained an express warranty by the assured that the vessel would be "laid up and out of commission at the Thames Shipyard" at New London, during the entire period of the insurance. It will thus be seen that under the express language of the two policies, the vessel was insured against a constructive total loss, but only while laid up and out of commission at the Thames Shipyard at New London. The policies were American contracts, and the words "constructive total loss" plainly referred to the established American 50% rule for ascertaining whether a constructive total loss existed or not. I cannot, therefore, escape the conclusion that if the libellant is able to show that the probable cost of salving and repairing the vessel is in excess of 50% of the agreed value of $240,000, he may recover for a constructive total loss on both policies.

■ The respondent does not dispute the American 50% rule, but contends that it has no application where the insured res reaches or is at the terminus ad quem specified in the policy. Various early cases dealing with voyage policies on cargo are cited in support of the contention, of which Forbes v. Manufacturers' Insurance Company, 1 Gray, Mass., 371, and Silloway et al. v. Neptune Insurance Company, 12 Gray, Mass., 73, may be taken as examples. In these cases, it was held that there could be no recovery for a constructive total loss where any considerable part of the goods, though less than half in value, was landed at the port for which they were shipped. I think there is a clear distinction between cases of that kind and the present one, for cargo is insured for a voyage and not a term; whereas in the present case the vessel was insured for a term while laid up and out of commission.

The respondent places its main reliance, however, on Pezant v. National Insurance Company, 15 Wend., N.Y., 453, decided in 1836. In that case, a ship was insured for a year at $6,000. The ship owner also owned the freight and cargo, and, by reason of general average contributions, the expense of repairs to the ship was reduced below 50% of the ship's value. It was, therefore, held that the ship owner could not abandon for a constructive total loss. Justice Bronson, who wrote the opinion, went further, however, and gave as an additional ground for the decision that the vessel had completed her voyage and reached the port of destination in a repairable state before abandonment was made.

The Pezant case was commented on favorably in Phillips on Insurance (1867) Section 1555. It was also cited in Parsons on Marine Insurance (1868) Vol. 2, p. 128, but the text indicates a doubt whether there is limitation on the 50% rule where the vessel actually performs the voyage insured and reaches her terminus ad quem. The case does not appear to have been followed in any subsequent American decision.

Whether the Pezant case was correctly decided on the second ground advanced by Justice Bronson may well be doubted. It is unnecessary though to take that ground, for in the present case the respondent insured the vessel against constructive total loss while laid up and out of commission in the very place where the damage occurred. If the insurance did not cover the risk of constructive total loss at that place, it did not cover it anywhere; and, clearly, by the

412

express language of the policies, it did cover the risk of constructive total loss somewhere.

■ 2. The remaining question concerns the sufficiency of the second cause of action. It is alleged in that cause of action that the respondent, after refusing to accept the tender of abandonment made by the libellant, notified the libellant that it would "promptly salvage and release" the vessel; and, further, that the respondent delayed the rescue operations so that the vessel was not floated until November 17, 1938, and did not reach the marine railway for examination until December 21, 1938. There is then the allegation, already mentioned, that because of "the unreasonable delays" "in freeing and salvaging" the vessel and because of the "failure to repair, restore * * * and return * * within a reasonable time", the respondent accepted the abandonment of the vessel.

I do not think that these allegations are sufficient to support a claim of constructive acceptance of abandonment. The policies contained the usual sue and labor clause, which protected the insurer as well as the insured against acts "in recovering, saving or preserving the property insured". The respondent, therefore, ran no risk that any action it might take in recovering the vessel would be deemed an acceptance of abandonment; and mere delay in taking such action could not of itself bring about a constructive acceptance of abandonment. The cases cited by the libellant are plainly distinguishable; they were for the most part based on facts showing some exercise of dominion over the vessel inconsistent with the position of an insurer. There is nothing of that kind alleged here.

■ I do not think, either, that the failure of the respondent to repair and restore the vessel is a valid ground for holding that there was a constructive acceptance of abandonment. The respondent was under no obligation to repair the vessel but merely to pay the amount of the loss under the terms of the policies. There is no allegation that the respondent undertook to make repairs and failed; nothing, except the naked allegation that the respondent failed to "repair", "restore" and "return". This is not enough. Reynolds v. Ocean Insurance Co., 1 Metc., Mass., 160; Chicago S. S. Lines v. United States Lloyds, D.C., 2 F.2d 767, affirmed 7 Cir., 12 F.2d 733.

3. The respondent's exceptions to the interrogatories are disposed of as follows: the exceptions to interrogatories numbered 14, 15, 16, 17, 25, 26 and 36 are sustained; the exceptions to the remaining interrogatories are overruled.

The exceptions of the respondent to the first and third causes of action are overruled; the exception to the second cause of action is sustained; and the exceptions to the interrogatories are disposed of as above indicated.