**MAGNUM MARINE CORP., N.V., Plaintiff,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Defendant.**

No. 85–2564–CIV.

United States District Court, S.D. Florida.

Aug. 4, 1986.

Rodney Earl Walton, Smathers & Thompson, P.A., Miami, Fla., for defendant.

Scott M. Sarason, Mitchell, Harris, Canning & Murray, P.A., Miami, Fla., for plaintiff.

**MEMORANDUM OPINION; FINDINGS OF FACT AND CONCLUSIONS OF LAW**

JAMES LAWRENCE KING, Chief Judge.

The above-styled action by the manufacturer of a 40–foot Magnum boat, bearing

Hull No. 40–004 and Florida License Registration No. FL5298EA for breach of an insurance contract came on for trial before this Court on June 4, 1986.

Based upon the entire record in these proceedings and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the findings of fact and conclusions of law of this Court are:

*Findings of Fact*

1. Plaintiff MAGNUM MARINE CORP., N.V. is a corporation organized and existing under the laws of the Netherlands Antilles with its principal place of business in Miami, Florida.

2. Defendant GREAT AMERICAN INSURANCE COMPANY is a corporation organized and existing under the laws of the State of Ohio with its principal place of business also therein.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $10,000 exclusive of interest and costs and between parties of different states.

4. On or about February 1, 1985, the plaintiff owned a 40 foot Magnum boat, bearing Hull No. 40–004 and Florida Registration No. FL5298EA which the plaintiff had constructed in 1982.

5. Between 1982 and 1985, the boat had been used as a demonstrator.

6. On or about February 1, 1985, the boat, during a sea trial by Mr. Theodoli of MAGNUM MARINE CORP., N.V., hit a seawall near Turnberry Isle. After the collision, the boat returned to the premises of MAGNUM MARINE (which is normally five or ten minutes away by vessel) under its own power and without taking on any water. GREAT AMERICAN INSURANCE COMPANY was immediately notified of the damage that had occurred to Magnum Hull No. 40–004.

7. Surveyors representing both the plaintiff and the defendant inspected the boat after the reported damage.

8. The collision caused the following damages:

a) Both sides of the hull were crushed and delaminated from the stem aft for seven to eight feet,

b) The foredeck was crushed from the stem aft for two feet and delaminated for six to seven feet along the starboard rail,

c) The forward bulkhead was broken away. The interior V-berth plywood panel was crushed and broken away from the hull,

d) The toilet was loosened from its fastenings,

e) The windshield shifted, its molding was loosened, and its fastenings were torn loose,

f) Both fuel tanks shifted,

g) The starboard engine bed stringer was bent inward, and

h) Cracks in the starboard aft due to side impact.

Furthermore, Mr. Pascoe's supplemental report of survey notes:

Many areas are totally inaccessible for survey, particularly under the cockpit deck. Since impact damage is now being found at the stern of the vessel it is most probable that additional damage will be found and would recommend opening up of all concealed areas of the vessel.

9. The surveyors disagreed as to whether the boat was repairable. Surveyors for the plaintiff contended that the boat was a total loss and could not be economically repaired. Surveyors for the defendant contended that the boat was repairable for less than the amount being claimed for a total loss.

10. The plaintiff was insured under a policy of insurance (H–369–82–63) with builder's risk clauses including a total loss provision which stated:

TOTAL LOSS

There shall be no recovery for a constructive Total Loss under this Policy unless the expense of recovering and restoring the Vessel (as insured hereunder) to the stage of her construction at time of loss would exceed her value at such stage of construction (which value shall

be taken to be the cost of labor actually expended by the Builder in the construction of the Vessel and material actually incorporated therein at the time of loss, including accrued overhead and profit on such labor and material, not exceeding the Agreed Value) ...

11. Said policy included a valuation provision which stated:

Valuation:

In the event of loss or damage hereunder it is mutually agreed that the valuation shall be determined in accordance with the following:

(a) Net cost to the Assured of all materials covered by this policy plus labor and expenses incurred.

(b) There shall be NO allowance for:

(1) Cost of operations

(2) Profit.

12. Said policy designated as loss payee MAGNUM MARINE. The policy also had a deductible of $2,500 unless the accident resulted in a total loss of the vessel.

13. Plaintiff estimates the cost of repairs, excluding profit and overhead, would be $135,000. Conversely, the defendant estimates a repair cost between $13,000 and $20,000. Although estimating a cost of repair, plaintiff contends that the damage to the boat constituted a total loss since restoring the vessel to the state of her construction (i.e., a new 40 foot Magnum) at the time of loss was impossible.

14. Although Hull No. 40-004 could have been repaired, this Court finds that the vessel could not be restored to the stage of her construction at the time of loss. Thus, the boat was a total loss. MAGNUM MARINE, being a builder and seller of high quality new boats, could not have sold Hull No. 40-004 as a new boat even if repairs were economically feasible. Since the damage to Hull No. 40-004 was so extensive, the vessel was unsaleable as a new boat.

15. Under the insurance contract's total loss provision, this Court finds that plaintiff's damages are the value of the boat ($215,593.16) less the salvage of the hull

($40,000) and parts ($50,324.19). Plaintiff's damages equal $125,268.67.

16. Where any finding of fact, in whole or in part, can be deemed a conclusion of law, it shall. Where any conclusion of law, in whole or in part, can be deemed a finding of fact, it shall.

*Conclusions of Law*

1. The defendant cites *Zeller Marine Corp. v. Nessa Corporation,* 166 F.2d 32 (2nd Cir.1948) for the proposition that following a collision, the owner of the injured vessel is simply entitled to a seaworthy vessel, not a vessel in the identical condition she was in before the injury.

2. The defendant also cites *The Armar,* 1954 AMC 1674 (N.Y. Trial Ct.1954) for the proposition that the damaged vessel need not be repaired by its insurer to a state of cosmetic perfection.

3. In relying on these two cases, the defendant fails to fully consider 1) the extensive damage to Magnum Hull No. 40-004 and 2) the intention of both parties when the contract was formed.

4. Regarding the extensive damage to the Magnum Hull, this Court must address the method of repairs contemplated in the contract. Assuming the defendant's reliance on *Zeller Marine* is well founded, then the contract's valuation and total loss provisions would be avoided. This Court finds that the contract provisions call for restoration and repair above a seaworthy vessel standard. Additionally, GREAT AMERICAN INSURANCE COMPANY need not provide MAGNUM MARINE with a boat of cosmetic perfection. However, the insurance policy entitles MAGNUM MARINE to something more than a $20,000 cosmetic touchup.

5. In the leading constructive total loss case, the Second Circuit stated:

The doctrine of "constructive total loss" was designed to alleviate the harshness of the requirement of an "actual total loss," where a shipowner is the insured, and where the costs of repairs would exceed the repaired value of the ship. It enables the shipowner to "abandon" the

vessel as if she were a total loss, while preserving to the insurer the right to recoup what it might from the sale or other disposition of the vessel abandoned to it.

*Lenfest v. Coldwell,* 525 F.2d 717, 724 (2nd Cir.1975) (footnotes omitted). Due to the extensive damage to the Magnum boat, this Court finds that "the costs of repairs would exceed the repaired value of the ship." Additionally, MAGNUM MARINE's mitigation of its damages was proper.

■ 6. The general rule under American maritime law is that an owner of a vessel may claim a constructive total loss of the insured vessel if the costs of repairs would exceed one half the total value of the vessel. *Marcardier v. Chesapeake Ins. Co.,* 8 Cranch 39, 12 U.S. 39, 3 L.Ed. 48 (1814); *Calmar S.S. Corporation v. Scott,* 209 F.2d 852 (2nd Cir.1954); *Jeffcott v. Aetna Insurance Co.,* 129 F.2d 582 (2nd Cir.1942); G. Gilmore & C. Black, *The Law of Admiralty,* 83 (2d ed. 1975). Under the contract of insurance as drafted by the defendant, the general rule was modified so any loss must "exceed her value at such stage of construction." The vessel that is the subject of this litigation was a new vessel that had been fully completed.

■ 7. The party who drafts an agreement shall have any ambiguities in the agreement held in favor of the non-drafting party. "Having drawn an ambiguous agreement, ... the defendant must be held to the interpretation least in their favor." *Navieros Oceanikos, Etc. v. S.T. Mobil Trader,* 554 F.2d 43 (2nd Cir.1977). The Court finds that the vessel in question was a new vessel under the terms of the contract and thus the insured was entitled to recover the value of a new Magnum vessel less salvage, profit, cost of operations, and the $2,500 deductible.

■ 8. In reviewing a contract, the court may look into the circumstances surrounding the contract. "A contract created by two parties is not made in a vacuum. To understand the contract, the Court must view it in the context of the events and circumstances from which it arose. The Court must, above all else, give effect to the parties intentions." *Treasure Salvors v. The Unidentified Etc. Sailing Vessel,* 556 F.Supp. 1319 (S.D.Fla.1983). The parties in this case had experienced a long-standing relationship; the defendant well knew that it was insuring the builder of new boats. Over the years, MAGNUM MARINE had paid over $200,000 in insurance premiums to the defendant for insurance on the boats in stock and under construction. It is a reasonable inference that the contracting parties intended that repairs to the insured vessels had to do more than place the vessel in a seaworthy condition. Repairs had to be made that would allow the vessel to be sold as new. If the vessel could not be repaired to its new condition for less than the value of the vessel, the insured could claim a constructive total loss.

THEREFORE, based upon the above findings of fact and conclusions of law, this Court does hereby ORDER and ADJUDGE as follows:

1. The plaintiff's damages for Magnum Hull No. 40–004 are $125,268.67 less the $2,500 deductible.

2. Plaintiff is awarded pre-judgment interest of 6%.

3. Plaintiff is awarded reasonable attorneys' fees under Fla.Stat. § 627.428. In accordance with the Pre-Trial Stipulation, the plaintiff shall submit affidavits in support of its motion for attorneys' fees within 10 days from the date of this order. The defendant shall have 20 days to respond to said motion (including the filing of affidavits) and may depose the affiants and the plaintiff's attorney.