**MAGNUM MARINE CORP., N.V.,**
**Plaintiff–Appellee,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Defendant–Appellant.**

No. 86–5933.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1988.

Rodney Earl Walton, Miami, Fla., for defendant-appellant.

Scott M. Sarason, Mitchell, Harris, Canning & Murray, Debra A. Jenks, Richard McAlpin, Miami, Fla., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

JOHNSON, Circuit Judge:

In this diversity case alleging breach of a marine insurance contract, Great American Insurance Company appeals from the award by the United States District Court for the Southern District of Florida of $122,768.67 [1] to Magnum Marine Corporation after a nonjury trial. We reverse and remand.

### I.

By a renewal of a Builder's Risk Insurance Policy, Great American agreed to cover all Magnum Marine vessels under construction or in stock against all risks of physical loss or damage. Only one insured boat is at issue in the present case.

Magnum Marine built a 40–foot powerboat in April 1982, and used the boat as a demonstrator for the next three years. On February 1, 1985, the boat hit a seawall during a sea trial. After the collision, the boat, under its own power and without taking on water, returned to Magnum Marine's premises. Magnum Marine immediately notified Great American of the damage to the boat's hull.

Surveyors representing Magnum Marine and Great American examined the boat's damage. Both sides agreed on the amount of visible damage, but Magnum Marine's surveyor contended additional unseen damage existed. Great American offered to conduct further surveys to see if hidden damages existed. In addition, Great American offered to pay to repair any hidden damages. At some point, rather than repair the boat, Magnum Marine stripped the boat, returning reusable machinery (valued at $50,324.19) to inventory and selling the damaged hull as is for $40,000.

Unable to reach an out-of-court solution, Magnum Marine sued Great American. The parties initially focused on the policy's

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. This figure does not include the district court's award of costs, reasonable attorney fees, and prejudgment interest.

limitation on recoverable damages contained in the "valuation clause":

Valuation:

In the event of loss or damage hereunder it is mutually agreed that the valuation shall be determined in accordance with the following:

a) Net cost to the Assured of all materials covered by this policy plus labor expenses incurred.

b) There shall be NO allowance for:

1) Cost of Operations

2) Profit

After closing argument, Magnum Marine, responding to the district court's questions, suggested that the policy's total loss provision provided a basis for recovery. That provision states in relevant part:

There shall be no recovery for a constructive Total Loss under this Policy unless the expense of recovering and restoring the Vessel (as insured hereunder) to the stage of her construction at time of loss would exceed her value at such stage of construction (which value shall be taken to be the cost of labor actually expended by the Builder in the construction of the Vessel and material actually incorporated therein at the time of loss, including accrued overhead and profit on such labor, not exceeding the Agreed Value).

The district court concluded that Magnum Marine could not have sold the boat as a new Magnum Marine boat even if repairs were economically feasible: "[T]he vessel could not be restored to the stage of her construction at the time of loss. Thus, the boat was a total loss." *Magnum Marine Corp. v. Great American Ins. Co.*, 640 F.Supp. 1142, 1144 (S.D.Fla.1986). The district court awarded Magnum Marine damages of $125,268.67.[2] The district court started with the value of the boat ($215,-593.16) and subtracted the salvage of the hull ($40,000) and parts ($50,324.19). Because of its holding, the district court had no need to reference the valuation clause and determine actual damages.

## II.

### A. *Failure to Tender Abandonment*

Magnum Marine first suggested the constructive total loss provision as a basis of liability *after* closing arguments had concluded (R5:249–250). A brief sketch of admiralty law[3] highlights why this late suggestion produced a record that does not address the points usually contested in cases of constructive total loss. Damage to a vessel[4] results in one of three conditions: (1) actual total loss,[5] (2) constructive total loss, or (3) partial loss. Under the policy here, constructive total loss occurs when restoration costs exceed the boat's value at the time of loss. By default, partial loss occurs when constructive total loss does not.

Admiralty law has developed two critical distinctions between constructive total loss and partial loss claims. First, if a constructive total loss occurs, the insured receives the boat's value without proof of particular damages. In contrast, recovery for partial loss requires proof of particular damages. Second, the insurer is alerted that the insured seeks recovery for constructive total loss because the insured abandons the boat. In contrast, recovery for partial loss does not require abandonment. American law fixes the right to abandon on the basis of facts at the time abandonment is tendered. Thus, the insurer would have to pay for a constructive total loss if a reasonable probability existed at the time of tender that restoration costs exceeded the boat's value at the time of loss.

---

2. This amount should be $125,268.97. The district court subtracted $2,500 from its award because the parties had stipulated before trial that a $2,500 deductible applied.

3. *See generally* G. Gilmore & C. Black, *The Law of Admiralty*, § 2–14 (2d ed. 1975).

4. Neither party disputes that the cause of the damage (i.e., hitting the seawall during a sea trial) triggered policy coverage.

5. Actual total loss, which occurs when the boat no longer exists *in specie*, is not implicated in the present case.

Problems arise when, as in the present case, the insured does not tender abandonment. Great American argues that Magnum Marine's failure to tender abandonment precludes recovery for constructive total loss. Magnum Marine first responds that Great American cannot raise this affirmative defense for the first time on appeal.

In *Fishing Fleet, Inc. v. Trident Ins. Co.*, 598 F.2d 925, 926 n. 1 (5th Cir.1979), this Court's predecessor held that the tender of abandonment issue is waived as an affirmative defense if not properly raised in the trial court. *See* Fed.R.Civ.P. 8(c). The Court noted that tender of abandonment is not an absolute prerequisite to recovery. A tender of abandonment is not required "if it would be a futile act or idle ceremony." *Rock Transport Properties Corp. v. Hartford Fire Ins. Co.*, 312 F.Supp. 341, 347 (S.D.N.Y.), *aff'd*, 433 F.2d 152 (2d Cir.1970). The *Fishing Fleet* Court concluded that whether a tender of abandonment would have been a futile act presented a question of fact and therefore the Court declined to consider the issue first raised on appeal.

■ Although *Fishing Fleet* seems to preclude our review, Magnum Marine's actions in the present case cause us to hold otherwise. Magnum Marine's complaint stated that "[a]s a result [of hitting a sea wall during a sea trial], MAGNUM sustained damage in excess of One Hundred Thirty-one Thousand One Hundred Seventy-five ($131,175.00) Dollars. The loss was covered by the terms of the policy." Magnum Marine thus sought recovery for *actual damages*. This allegation is consistent with a partial loss claim, which does not require abandonment as a precondition for recovery. Consequently, if Great American had responded to Magnum Marine's complaint by asserting failure to tender abandonment as an affirmative defense,

that defense most likely would have been struck as frivolous. *See* Fed.R.Civ.P. 12(f).

None of Magnum Marine's subsequent actions in connection with the litigation suggested that recovery was sought for constructive total loss. The parties' pretrial stipulation expressly provided that "[t]his is an action for breach of an insurance contract in the amount of $131,175.00 together with interest, costs and attorneys' fees." In addition, the stipulation references and quotes the valuation clause without setting forth the total loss provision. Magnum Marine also agreed to a pretrial stipulation that "[t]he policy has a deductible of $2,500.00." The insurance policy states that "there shall be deducted from the aggregate of all claims ..., the sum of $2,500.00, *unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply*." Magnum Marine, by agreeing to this stipulation, indicated that it sought damages for partial loss, not recovery for constructive total loss. Because Magnum Marine did not suggest constructive total loss as a basis of liability until after closing arguments, we address Great American's contention that failure to tender abandonment precludes Magnum Marine's recovery for constructive total loss.

■ Magnum Marine argues, pursuant to *Rock Transport*, that tender would have been futile. *Rock Transport* is not applicable to the present case because the insurance company there denied *any* liability. Here, Great American does not dispute liability; it only questions the amount of Magnum Marine's recovery. Here, however, tender still would be futile. Great American believed Magnum Marine should recover between $13,000 and $20,000. Because this figure would not exceed the boat's value at the time of loss, Great American would have refused the tender.[6] Consequently, Magnum Marine's failure to tender does not block recovery for constructive total loss.[7]

---

**6.** Great American would have refused because its acceptance would have indicated agreement with Magnum Marine's claim that constructive total loss had occurred.

**7.** Such a conclusion comports with the policy for requiring abandonment. Abandonment prevents the insured from getting the boat's insured value and then gaining a windfall from the boat's salvage value. *See Rock Transport*, 312

## B. *Constructive Total Loss*

As defined by the insurance policy, the district court could conclude that a constructive total loss occurred only after quantifying two monetary amounts.

### 1. *Boat's Value at Time of Loss*

The district court initially determined the boat's "value at [the] stage of construction [at the time of loss]." The policy defined that value as "the cost of labor actually expended by the Builder in the construction of the Vessel and material actually incorporated therein at the time of loss, including accrued overhead and profit of such labor and material, not exceeding the Agreed Value." The district court determined this value as $215,593.16.

Great American argues that this factual finding, in light of the evidence before the district court, is clearly erroneous. Great American argues that, although the insurance policy required adding together labor costs, materials costs, overhead costs, and profit to arrive at the boat's value, the $215,593.16 figure did not include profit or overhead, according to Magnum Marine's own witnesses. Great American's argument is without merit. Great American's reference to trial testimony by one of Magnum Marine's witnesses, *see* R5:204, overlooks that the witness testified that a construction cost of *$204,000* did not include overhead costs and profit.[8]

### 2. *Repair Expense*

The district court then had to determine "the expense of recovering and restoring the Vessel (as insured hereunder) to the stage of her construction at time of loss." Because the boat made it back to Magnum Marine's premises under its own power, only restoration expenses are relevant here.

Neither party disputes that the boat could have been repaired. Magnum Marine's expert witness testified that repairs would cost $150,000 (R:3–39). Great American's expert witnesses testified that repairs would cost between $13,000 and $20,000 (R:3–106, R:3–124, R:4–147–148). Because the boat's value of $215,592.80 exceeds repair costs, the constructive total loss provision does not appear implicated.

Magnum Marine, however, argues that the repairs would not "restor[e] the Vessel . . . to the stage of her construction at time of loss." Magnum Marine contends that it is entitled to a new boat, and not just a repaired boat. The district court agreed:

> Although [the vessel] could have been repaired, this Court finds that the vessel could not be restored to the stage of her construction at the time of loss. Thus, the boat was a total loss. MAGNUM MARINE, being a builder and seller of high quality new boats, could not have sold [the vessel] as a new boat even if repairs were economically feasible. Since the damage to [the vessel] was so extensive, the vessel was unsaleable as a new boat.

640 F.Supp. at 1143. In contrast, Great American argues that "stage of her construction at time of loss" means Magnum Marine was entitled only to a boat in seaworthy condition.

■ We do not agree with the interpretation offered by either party or accepted by the district court. Rather, we hold that the term "stage of her construction at time of loss" as applied to a completed vessel that will be sold means that the vessel, once repaired, must be capable of being sold for a price at least equal to the boat's value (calculated pursuant to the insurance policy provision) at the time of the accident.

F.Supp. at 347. Here, the district court subtracted the boat's salvage value ($90,324.19) from its award, and Great American presented no evidence that the salvage value was too low.

8. We note, however, that pursuant to the insurance policy the boat's value "shall be taken to be the cost of labor actually expended by the Builder in the construction of the Vessel and material actually incorporated therein at the time of loss, including accrued overhead and profit on such labor, *not exceeding the Agreed Value.*" The Agreed Value in the present case is $215,592.80 (R3:53). The district court thus should have found $215,592.80 as the boat's value. The small difference between the boat's value and the figure referenced by the district court does not influence our holding.

We reject Great American's argument that under maritime law Magnum Marine was entitled only to a seaworthy vessel. The relevant cases cited by Great American involve vessels whose primary purpose was shipping. In contrast to those cases where seaworthiness is the prime concern, the present case involves a company selling pleasure boats where the saleability of its boats is the prime concern. The repaired vessel thus must be seaworthy *and* capable of being sold.

Determining that Magnum Marine was entitled to a boat capable of being sold does not mean that a constructive total loss occurred. Magnum Marine argues, and the district court agreed, that the repaired boat must be capable of being sold as a *new* boat. We do not so read the insurance policy. The policy, especially because its valuation clause specifically excludes consequential damages from recovery, provides only that the insured shall recover the cost of construction or the Agreed Value, whichever figure is lower. Magnum Marine's reading, however, would permit recovery for consequential damages, and would frustrate the purpose of the constructive total loss provision because recovery for constructive total loss would be permitted even though an insured could sell the repaired boat and receive an amount at least equal to the boat's value at the time of the accident. Consequently, we interpret the term "stage of her construction at time of loss" to require that the repaired vessel be capable of being sold for at least the boat's value at the time of the accident.

■ In the present case, Magnum Marine failed to present any evidence that the boat, once repaired,[9] could not be sold for at least the boat's value at the time of the accident (i.e., $215,592.80). Indeed, Great American's expert witness testified that the repaired boat could be sold for more than that amount. *See* R:4–144–147. Because Magnum Marine failed to show that the repaired boat could not be sold for at least the boat's value at the time of the accident, the constructive total loss provision was not implicated. The district court should have determined actual damages pursuant to the policy's valuation clause. Accordingly, we REVERSE and REMAND for such a determination.

---

**9.** Magnum Marine's expert witness testified that the boat, once repaired, would be a safe vessel.