J. Doyle **FULLER**, Plaintiff,

v.

**STATE FARM FIRE & CASUALTY COMPANY**, Defendant.

Civ. A. No. 88–T–974–N.

United States District Court, M.D. Alabama, N.D.

Feb. 3, 1989.

James Jerry Wood and Charles L. Anderson, Wood & Parnell, P.A., Montgomery, Ala., for plaintiff.

Michael B. Beers, Beers, Anderson, Jackson & Smith, Montgomery, Ala., for defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This cause, in which plaintiff J. Doyle Fuller seeks to recover on an insurance policy with defendant State Farm Fire & Casualty Company, is now before the court on cross-motions for summary judgment filed by both parties. For the reasons that follow, Fuller's motion is due to be denied in its entirety, and State Farm's motion is due to be granted in part and denied in part.

### I.

Fuller owns a recreational boat, which he has insured with State Farm against loss through a number of circumstances. Fuller's boat sank in May 1988, leading to the dispute at hand.

In the insurance policy between the parties, the boat's current cash value is set at $10–12,000.00, although the total insurance on the boat is $25,000.00, its purchase price. After the boat sank, Fuller filed a proof of loss, and State Farm arranged for an estimate of the cost of repairs to the boat.[1] The estimate amounted to $11,-180.00. In his proof of loss, Fuller demanded the full coverage limit of $25,-000.00. Based on the repair estimate and its construction of the policy, however, State Farm tendered $9,253.00 to Fuller, representing the cost of repairs, less depreciation and Fuller's deductible. Fuller rejected this tender and filed the suit at hand.

In his complaint, Fuller sets out three counts. In the first count, Fuller asks this court to declare the rights of the parties under the policy. Count II charges State Farm with breach of the insurance contract, and count III alleges bad faith refusal to pay. Fuller seeks summary judgment on counts I and II of his complaint, and State Farm seeks summary judgment on all three counts.

### II.

Leaving aside Fuller's bad faith claim for the moment, both parties contend that the contract on which Fuller's claims depend is clear and unambiguous and that the parties dispute no material issues of fact. Despite these assurances of clarity, Fuller and State Farm interpret crucial contractual clauses differently. In any event, by these contentions, both Fuller and State Farm claim to fall within the confines of Fed.R. Civ.P. 56. After reviewing all affidavits and documentary evidence offered by the parties in support of their motions, however, the court concludes that genuine issues of material fact remain in dispute at this stage of the case.

### A.

Before reaching the disputed provisions of the insurance policy, the court notes a decisional point glossed over by both Fuller and State Farm. Fuller originally filed this action in Montgomery County Circuit Court,

---

1. The court does not purport to relate facts in strictly chronological order at this time. Apparently, Fuller neglected to sign his claim, resulting in some delay in the processing of the claim.

As will become clear later in this order, the court uses the term "boat" at this point in a generic sense. The court does not mean to imply that the term signifies boat and motor as an integrated unit for purposes of the policy.

and State Farm petitioned for removal to this court on the grounds that the court has original jurisdiction pursuant to 28 U.S.C.A. § 1332, diversity jurisdiction. Although the parties have not briefed the issue, the court notes that the terms of Fuller's policy raise the possibility that it may be a marine insurance policy, and thus subject to federal admiralty law. *E.g., Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962); *Lexington Ins. Co. v. Cooke's Seafood,* 686 F.Supp. 323 (S.D. Ga.1987), affirmed 835 F.2d 1364 (11th Cir.1988). A general, accepted characterization of a marine insurance policy is: "The essence of the contractual position in which [the] parties stand is simple: the assured agrees to pay a premium, and the assurer agrees that, if certain losses or damage occur to certain interests of the assured, in a marine venture, the assurer will indemnify the assured." G. Gilmore & C. Black, The Law of Admiralty § 2–3 at 56 (2d ed.1975). Whether Fuller's policy is or is not a marine insurance contract is important for purposes of determining whether federal or state law principles apply.

■ Fortunately, this odd interplay of federal and state law has no effect on the substantive outcome of this motion. Under the prevailing view, if no federal admiralty decisional rule exists on a disputed point, then state decisional law applies. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1954); *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.,* 795 F.2d 940, 948 (11th Cir.1986); *Steelmet, Inc. v. Caribe Towing Corp.,* 779 F.2d 1485, 1488 (11th Cir.1986). As will be explained in subsequent sections of this order, two issues of dispute over the language of the policy exist between the parties. On the first issue, whether the term "boat and motor" is ambiguous as used in the policy, the court can find no applicable federal admiralty law rule, and thus applies state law rules. On the second issue, the legal meaning of the general term "total loss," a federal rule does exist. Under certain circumstances, then, the meaning of the phrase might turn on whether the policy is

a marine insurance contract, in which case this court would apply the federal rule, or a different sort of contract, in which case state law would govern. Fortunately, Alabama law and federal admiralty law coincide with respect to the meaning of "total loss," as the court explains in section II.C. Therefore, the court need not resolve the unbriefed issue of whether the policy at hand is a form of marine insurance. Since Alabama has adopted the common admiralty rules on the subject, that law is applicable regardless.

### B.

■ Turning now to the briefed points of contention, the parties ask the court to construe the insurance contract between them. The first issue is whether the provision of the policy relating to loss settlement is ambiguous. Applying Alabama law, this task of construction accrues to the court as a question of law. *E.g., Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., Inc.,* 526 So.2d 871, 873 (Ala.1988). The provision, found at page five of the policy, reads:

3. Loss Settlement.

Covered losses are settled for not more than the smallest of the following amounts:

A. the coverage limit shown in the Declarations;

B. actual cash value at the time of loss. This means there may be deduction for depreciation;

C. the cost of repair subject to depreciation;

D. the cost of replacement.

If the boat and motor described in the Declarations are a total loss, we will pay you the Coverage A limit shown in the Declarations for that boat and motor. This provision applies only if both the boat and motor are total losses resulting from one occurrence.

Fuller contends that his boat, considered as an integrated unit of boat and motor, is a total loss. He further asserts that the final paragraph of the loss settlement provision clearly treats boat and motor as one

integrated unit for purposes of coverage, and that State Farm is therefore obligated to pay the policy limit, $25,000. State Farm, on the other hand, contends that the provision clearly requires that the boat and motor are considered separate units, and that each must be a total loss to justify payment of the coverage limits. State Farm further contends that only the motor was a total loss in Fuller's situation, and that the company correctly chose the smallest of the four specified amounts to compensate Fuller for his loss, pursuant to its rights under the policy. The parties each urge the court to find that the contract clearly and unambiguously accords with that party's interpretation.

Under Alabama law, "Whether an agreement is ambiguous is a question of law for the trial court. When the terms are clear and certain, the court, and not the jury, has the duty to determine the meaning of the agreement. In order to ascertain the intention of the parties, the clear and plain meaning of the terms of the agreement are to be given effect, and the parties are presumed to have intended what the terms clearly state. Extrinsic evidence may be admitted to interpret a contract only if the court finds that the contract is ambiguous." *Terry Cove North, Inc. v. Baldwin County Sewer Authority, Inc.,* 480 So.2d 1171, 1173 (Ala.1985) (citations omitted).[2] The fact that the parties adopt conflicting interpretations of a contract in the throes of litigation does not create an ambiguity where none exists. *Hill Air of Gadsden, Inc. v. City of Gadsden,* 467 So.2d 230, 233 (Ala.1985).

The court believes that the final paragraph of the loss settlement provision is certain with respect to the severability issue, and that State Farm's interpretation is the "clear and plain meaning" of that provision. Fuller has given the court no serious reason why the parties would use the language "boat and motor" to convey the meaning "boat." The paragraph's final sentence could hardly signal the meaning of the provision more clearly—boat *and* motor must be total *losses,* as opposed to a total loss, and the damage to boat and motor must derive from a common occurrence. Under Fuller's strained interpretation of the provision, much of the paragraph would be unnecessary surplusage. The court presumes that Fuller intended to give effect to the plain language of the provision, however, and that plain language, in the court's view, is that "boat" and "motor" are considered separate and distinct objects for purposes of the loss settlement provision.

### C.

■ The court's resolution of the first disputed issue does not by its own force entitle State Farm to summary judgment, however. For that relief, State Farm must still prove the propriety of their offered payment. And if Fuller demonstrates that both the motor and the rest of his vessel are total losses as a result of the May accident, then summary judgment may yet be due him on his claims. Upon consideration of the present record, the court concludes that neither Fuller nor State Farm

---

**2.** The court is aware that the Supreme Court of Alabama may have overstated the clarity of the law in this area in *Terry Cove.* Alabama does recognize the doctrine of latent ambiguity. "A latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." *Cathbake Invest. Co., Inc. v. Fisk Electric Co., Inc.,* 700 F.2d 654, 656 (11th Cir.1983) (*citing Gibson v. Anderson,* 265 Ala. 553, 92 So.2d 692, 694 (1956)). In this case, both parties seek to characterize the contract as unambiguous, and thus do not discuss the application of the latent ambiguity doctrine.

Fuller does urge the court to consider the impact of a "Declarations" portion of the policy in construing the loss settlement provision. He avers that the declarations appear on a typewritten page appended to, and assumedly integrated into, the policy. Fuller has not provided any documentary support for this assertion, however, and the court cannot consider the impact of a document outside the record to which it has no access.

In any event, the court sees no obvious application of the latent ambiguity doctrine at this stage of the case on the present record. Since the court finds the contested provision has a clear and plain meaning, it will follow *Terry Cove* in according that meaning its natural effect.

has demonstrated this right to judgment as a matter of law.

This leads the court to the second issue mentioned in section II.A. The insurance policy does not appear to define the term "total loss," and the parties differ in their interpretations of this term as well. Upon review of the federal common law relating to marine insurance policies and the Alabama state law on the subject, the court is convinced that the term is unambiguous and has a settled legal meaning.

State Farm, in its briefs and supporting materials, apparently assumes that the term means that the good is rendered useless or irreparable as a result of the accident. State Farm's counsel adopts essentially the same interpretation of this term as the company's claim superintendent, who in a review letter to Fuller cited Black's Law Dictionary for the proposition that "total loss is generally defined as the complete destruction of the property." A more complete perusal of that text reveals two separate notions of "total loss," and also illuminates the differing stances of State Farm and Fuller as to the meaning of the phrase:

> *Actual total loss.* The total loss of the vessel covered by a policy of insurance, by its real and substantive destruction, by injuries which leave it no longer existing *in specie,* by its being reduced to a wreck irretrievably beyond repair, or by its being placed beyond the control of the insured and beyond his power of recovery. Distinguished from a *constructive* total loss, which occurs where the vessel, though injured by the perils insured against, remains *in specie* and capable of repair or recovery, but at such an expense, or under such other conditions, that the insured may claim the whole amount of the policy upon abandoning the vessel to the underwriters. In such cases the insured is entitled to indemnity as for a total loss.

Black's Law Dictionary 1336 (5th ed. 1979). *See also Magnum Marine Corp., N.V. v. Great American Ins. Co.,* 835 F.2d 265, 267 (11th Cir.1988). Using Black's definitions, which find support in the relevant admiralty law decisions, State Farm assumes that the term "total loss" in the policy means "actual total loss," while Fuller urges that the term as used in the policy means either actual total loss or "constructive total loss." Fuller further argues in essence that, in the absence of explicit contractual provisions to the contrary, the common law impresses upon the policy the definition of constructive total loss. Under the relevant state and federal precedents, the court agrees.

Relevant precedent on this point is admittedly sparse. Fuller correctly contends that Alabama recognizes the common law doctrine of constructive total loss, albeit that the recognition came in the mid-nineteenth century and has never been restated in reported cases. Chief Justice Rice, speaking for the Supreme Court of Alabama in 1858, adopted Justice Story's earlier admiralty law holding for the United States Supreme Court "that if, after the damage [to the insured vessel] is or might be repaired, the ship is not or would not be worth, at the place of repairs, double the cost of the repairs, it is to be treated as a technical total loss." *Fulton Ins. Co. v. Goodman,* 32 Ala. 108, 129 (1858) (*quoting Bradlie v. Maryland Ins. Co.,* 37 U.S. (12 Pet.) 378, 399, 9 L.Ed. 1123, 1132 (1838) (*citing Patapsco Ins. Co. v. Southgate,* 30 U.S. (5 Pet.) 604, 8 L.Ed. 243 (1831))). *See also Bradlie,* 37 U.S. at 397–399, 9 L.Ed. at 1132 (*citing* 3 Kent's Commentaries 321, 330 (n.d.)). Although the Alabama precedent is archaic, it accords with the orthodox view of American courts, state and federal, on the subject, that the insured has the right, absent contractual provision to the contrary, to treat as a total loss damage to the vessel which exceeds one-half the value of the vessel as repaired.[3] Treatises on the subject confirm the authority. Two commentators have observed that:

---

**3.** The court now faces a slightly different issue than simple ambiguity of a contractual term. Normally, once an ambiguity is determined as a

matter of law, resolution of the ambiguity falls to the finder of fact. Here, however, the policy between Fuller and State Farm is infected with

Constructive total loss, it will be seen, is distinguished on one side from actual total loss, and on the other from partial loss. The principal effect of the first distinction is that no formal abandonment need be made in respect of the actual total loss, while the tender of abandonment, either accepted by the underwriter or binding upon him because of the existent facts, is a prerequisite to a claim under a constructive total loss. The principal importance of the constructive total loss doctrine on the other side (apart from the convenience to any assured of receiving payment of the policy value without proof of particular damages and charges and without bothering any further with a badly damaged ship or cargo) is to the assured whose policy protection is against total loss only.

G. Gilmore & C. Black, The Law of Admiralty 85 (2d ed. 1975). Another commentator has observed that:[4]

> A constructive total loss, ... exists where the loss, although not actually total, is of such a character that insured is entitled, if he thinks fit, to treat it as total by abandonment.
>
> As a general rule, insured may treat the loss of ship or cargo as total where it is damaged ... more than fifty per cent of its value, unless the policy provides otherwise. The rule has been held to apply wherever the ship is damaged. A damage of fifty per cent only of the value is insufficient; it must be in excess of fifty per cent, although there is also authority to the contrary.

45 C.J.S. *Insurance* § 956(a) at 1150 (1946).

Along these same lines, the definitive insurance treatise states, "Insurance on a ship against total loss only, even if a time policy, covers a constructive total loss. However, a policy providing coverage only for an absolute physical total loss or an absolute total loss, would not cover a constructive total loss." 6 J. Appleman & J. Appleman, Insurance Law and Practice § 3704 at 9–10 (1972).[5] The policy in this case is of the type mentioned in the first sentence, not the second.

Aside from the common application of the rule within the United States, the constructive total loss doctrine is grounded upon salutary, pragmatic principles of default allocation of risk between insurer and shipowner. *See Asphalt International, Inc. v. Enterprise Shipping Corp., S.A.,* 667 F.2d 261, 265 (2d Cir.1981). Judge Learned Hand aptly summarized these principles.

> [The constructive total loss doctrine] is granted to relieve the owner of the embarrassment of having upon his hands a ship, completely useless as she lies, and being without remedy until such time as

---

[4] a residual virus of ancient maritime common law, which Alabama adopted in *Goodman.* The common law presumption of a right to abandon is invasive, in that it occupies otherwise neutral contractual language, but fragile, in that explicit expressions of positive law or contractual bargaining easily displace the presumption. In Great Britain, for instance, the British Marine Insurance Act of 1906 displaced the common law presumption. In both Britain and the United States, displacement of the presumption by contractual provision is probably now the norm. *See generally Lenfest v. Coldwell,* 525 F.2d 717, 724 (2d Cir.1975); G. Gilmore & C. Black, *supra,* § 2–14 at 83–84.

In this case, however, neither positive law nor contractual provision displace the common law rule, leaving the court in the position, not of forwarding the issue to the jury for resolution, but rather of issuing a legal ruling. Though he might not have foreseen their application to the case at hand, Lord Justice MacKinnon's words aptly describe the present situation. "The truth is that [the] law of maritime insurance is nothing more than a collection of rules for the construction of the ancient form of policy and such additions as are from time to time annexed to it. The ancient form dates back at least to the sixteenth century, and it is a document which the late Sir Frederick Pollock characterized, with justifiable asperity, as 'clumsy, imperfect, and obscure.'" *Forrestal Land, Timber and Ry. Co. v. Rickards,* [1941] 1 K.B. 225, 246, *quoted in Calmar S.S. Corp. v. Scott,* 345 U.S. 427, 432 n. 2, 73 S.Ct. 739, 742 n. 2, 97 L.Ed. 1125 (1953).

[4] The Eleventh Circuit noted this section in its comments on actual and constructive total loss in *Magnum Marine,* 835 F.2d at 267.

[5] State Farm does not contend in its brief that the policy proscribes coverage for constructive total loss, but rather fails to discuss the issue. Since the court finds no provision of the policy providing for coverage only of actual total loss, it is not faced with any question regarding the validity of such a clause under either federal admiralty law or Alabama law.

she can be recovered and repaired, which may mean an indefinite postponement.... It follows inescapably, so far as we can see, that if the ship has become innavigable because of a risk insured against, and, if it is impossible for the owner, within the time allotted to him to elect whether to abandon, to form any reliable estimate of the prospective expense of her recovery and repair, to say nothing of an estimate "of the highest degree of probability," he is entitled to abandon; and this we think is a privilege given by the law quite aside from any provision in the policy, although of course the policy may provide otherwise.

*Calmar S.S. Corp. v. Scott,* 209 F.2d 852, 854 (2d Cir.1954).

The policy at hand is cast in general terms so far as total loss is concerned; thus both federal and state authorities compel the conclusion that a constructive total loss is included within the terms of the loss settlement provision. Therefore, if Fuller can prove that both the boat and the motor were constructive total losses in this case, he is entitled to invoke the final paragraph of the loss settlement provision.[6]

■ Having fulfilled its legal task of construction of the insurance policy at hand, the court nonetheless must conclude on the current record that the facts of the case are not sufficiently clear to justify judgment for either Fuller or State Farm. To begin with, the court is puzzled by, and concerned over, discrepancies in the evidentiary materials submitted by Fuller and State Farm. The parties seemingly agree that only one estimate of repairs for Fuller's vessel has been conducted. Each party presents a copy of such an estimate in support of its respective motion for summary judgment; each form is stamped with

the same file number; and each form bears the same corporate insignia reflecting the corporation conducting the repair estimate. The two copies are not identical, however. Fuller's copy has one more line entry on the "parts" portion of the estimate than State Farm's. The final line entry on the "labor" portion is labeled differently on the two copies, and shows different amounts. The court is uncertain whether two independent estimates exist, each reaching the identical total cost figure, or if not, why the two copies of the same estimate submitted by the parties deviate.

Beyond this confusion, neither party has clearly demonstrated to the court that the boat (excluding the motor) is, or is not, a constructive total loss. The dispositive question is whether the cost of repairing the boat exceeds one-half its actual market value.[7] State Farm argues only that the hull was fully recovered without damage after the accident. The company does not attempt to allocate cost of repairs between boat and motor. Given the court's construction of the policy, State Farm has not shown its right to judgment as a matter of law.

Nor has Fuller. The court is of the opinion that his attempt at allocation of cost of repairs between boat and motor fails to settle the dispute factually. Fuller argues that the repair estimate "clearly shows $7,050 worth of repairs necessary to the motor, and $4,130 worth necessary to the boat." Aside from the discrepancies in proffered estimate figures mentioned above, the court simply does not find the matter as clear as Fuller would have it. The estimate form includes costs relating to engine and transmission, which do clearly relate to the motor. The estimate also includes costs for "gauges, pumps, and battery charger," and for "wiring," costs to

---

**6.** Moreover, the court notes the parallel legal principle in favor of a construction yielding broader coverage when the policy, as in this case, was drafted by the insurer.

**7.** The court employs without extended analysis the general rule that the cost of repairs is compared to the market value of the ship preceding injury, as opposed to the insured value (in this case, $25,000 for boat and motor together). *See* 6 J. Appleman & J. Appleman, *supra,* § 3706 at

16–19; G. Gilmore & C. Black, *supra,* § 2–14 at 84; 45 C.J.S. *supra,* § 956(b) at 1151. These authorities also state that the parties may contract for a different rule to apply. *See also Self Towing, Inc. v. Brown Marine Services, Inc.,* 837 F.2d 1501, 1506 (11th Cir.1988). The court finds nothing in the policy here to suggest that Fuller and State Farm intended to apply a different rule in this case.

repair the "tower" and to "rework stuffing boxes and steering." Some of these costs doubtless relate to the boat and not to the motor. The parties have given the court no guidance in understanding which costs relate to boat and which to motor, however, and the court will not blindly assume the division. The task lies well outside the court's inherent expertise, and Fuller has not established by the requisite degree of legal certainty that both the boat and the motor are constructive total losses. Therefore, both Fuller's and State Farm's motions for summary judgment as to counts I and II must be denied.

### III.

 One issue remains. State Farm also moves for summary judgment in its favor on Fuller's bad faith claim. This motion is due to be granted as to this claim.

The elements of Fuller's bad faith refusal to pay claim under Alabama law are as follows:

(a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*McLaughlin v. Alabama Farm Bureau Mut. Casualty Ins. Co.*, 437 So.2d 86, 90 (Ala.1983). While a plaintiff must eventually prove each of these elements, a bad faith claim under Alabama law "ultimately depends upon whether there is a debatable reason for denying the claim." *Jones v. Alabama Farm Bureau Mut. Casualty Co.*, 507 So.2d 396, 402 (Ala.1986) (Torbert, C.J., concurring specially). This case involves a dispute over the amount of payment due on Fuller's policy—State Farm has already offered the payment it deemed appropriate under the policy. The company's interpretation of the policy has some legal support, and is neither unreasonable nor unjustifiable. In short, the court feels that Fuller simply cannot meet the requirements of a bad faith claim on the facts of this case.

Accordingly, it is ORDERED that plaintiff J. Doyle Fuller's November 23, 1988 motion for partial summary be and it is hereby denied. It is further ORDERED that defendant State Farm Fire & Casualty Company's November 28, 1988 motion for summary judgment be and it is hereby granted as to count III of Fuller's complaint, and denied in all other respects.