**J. Doyle FULLER, Plaintiff,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant.**

**Civ. A. No. 88–T–974–N.**

District Court of the United States, M.D. Alabama, N.D.

July 27, 1989.

James Jerry Wood, Charles L. Anderson, Wood & Parnell, P.A., Montgomery, Ala., for plaintiff.

Michael B. Beers, Beers, Anderson, Jackson & Smith, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff J. Doyle Fuller seeks to recover on an insurance policy issued by defendant State Farm Fire & Casualty Company for losses suffered when his vessel sank. Fuller charges State Farm with breach of the insurance contract and asks the court to declare the rights of the parties under the policy.[1] The court conducted a trial of the matter on July 12, 1989. For the reasons that follow, the court concludes that judgment is due in favor of Fuller and against State Farm.

### I.

Fuller owns a recreational boat, a 1978 23-foot Black Fin with an in-board Ford motor. Fuller insured the boat "against all risk of physical loss or damage," with some exceptions not here relevant, with State Farm. The boat sank while docked and moored in the Gulf of Mexico off the Florida coast in May 1988, leading to the dispute at hand.

In the insurance policy between the parties, the boat is valued at $25,000, the maximum amount recoverable in case of loss. The fair market value of the boat prior to the time it sank was $10,000 to $12,000.

---

1. The court granted summary judgment in favor of State Farm on Fuller's bad faith claim. *Fuller v. State Farm Fire & Casualty Co.,* 721 F.Supp. 1219, 1226 (M.D.Ala.1989).

The policy provides for coverage in case of loss under the following terms:

3. Loss Settlement.

Covered losses are settled for not more than the smallest of the following amounts:

A. the coverage limit shown in the Declarations;

B. actual cash value at the time of loss. This means there may be deduction for depreciation;

C. the cost of repair subject to depreciation;

D. the cost of replacement.

If the boat and motor described in the Declarations are a total loss, [State Farm] will pay [Fuller] the Coverage A limit shown in the Declarations for that boat and motor. This provision applies only if both the boat and motor are total losses resulting from one occurrence.

After the boat sank, Fuller filed a proof of loss, and State Farm arranged for an estimate of the cost of repairs to the boat. The estimate, prepared by a local boat repair and sales shop, came to a total of $11,180. In his proof of loss, Fuller demanded the full coverage limit of $25,000, asserting that his boat was a total loss. Based on the repair estimate and its construction of the policy, however, State Farm tendered $9,253 to Fuller, representing the cost of repairs, less depreciation and Fuller's deductible. Fuller rejected this tender and filed the suit at hand.

## II.

 At the outset, the court again finds that admiralty law applies in this case. *Fuller v. State Farm Fire & Casualty Co.*, 721 F.Supp. 1219, 1221 (M.D.Ala. 1989). Federal admiralty law applies in the usual instance to marine insurance contracts. *Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551, 1554 (11th

Cir.1989); *see also Angelina Casualty Co. v. Exxon Corp. U.S.A.*, 876 F.2d 40 (5th Cir.1989).[2] If no federal admiralty rule exists on a disputed point, then state law rules apply to fill the gap. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Kilpatrick Marine Piling v. Fireman's Fund Insurance Co.*, 795 F.2d 940, 948 (11th Cir.1986); *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir.1986).

 By the terms of the insurance policy at issue in this case, State Farm agrees to pay Fuller the full limit of his coverage, $25,000, if both the boat and the motor are total losses resulting from one occurrence. The insurance policy does not, however, define the term "total loss." In an earlier order in this case, the court construed this policy term to mean either an "actual" total loss or a "constructive" total loss. *Fuller v. State Farm Fire & Casualty Co.*, 721 F.Supp. at 1223–25. An actual total loss occurs when the vessel is lost or completely destroyed, that is, when it no longer exists *in specie*. *See, e.g., Magnum Marine Corp., N.V. v. Great American Insurance Co.*, 835 F.2d 265, 267 n. 5 (11th Cir.1988). Under the "American rule," a constructive total loss occurs when the cost to repair the vessel exceeds one-half its value as repaired. 6 J. Appleman & J. Appleman § 3706 at 16 (1972); G. Gilmore & C. Black, The Law of Admiralty § 2–14 at 125 (2d ed. 1975); 45 C.J.S. *Insurance* § 956(a) at 1150 (1946). This rule differs from the earlier "English rule," that the vessel is a constructive total loss if the cost of repairs exceeds the full value of the vessel as repaired. *See* G. Gilmore & C. Black, *supra*, at 83–84. The court reiterates its holding that this policy, which uses "total loss" in a generic sense, covers constructive as well as actual total losses in the provision requiring State Farm to pay the policy limits. *See* 6 J. Appleman & J. Ap-

---

**2.** A standard characterization of a marine insurance policy is: "The essence of the contractual position in which [the] parties stand is simple: the assured agrees to pay a premium, and the assurer agrees that, if certain losses or damage occur to certain interests of the assured, at risk in a marine venture, the assurer will indemnify

the assured." G. Gilmore & C. Black, The Law of Admiralty § 2–3 at 56 (2d ed. 1975). On the difficulties in discerning the appropriate choice of law to apply in marine insurance cases, see H. Baer, Admiralty Law of the Supreme Court 373–94 (1979).

pleman, *supra,* § 3704 at 9–10 ("[i]nsurance on a ship against total loss only ... covers a constructive total loss").

State Farm contends that the court should use the vessel's insured value, in this case $25,000, rather than its fair market value, in determining whether Fuller suffered a constructive total loss. Some courts have stated the constructive total loss rule to be whether the cost of repairs exceeds one-half the insured value of the boat. *See Jeffcott v. Aetna Ins. Co.,* 129 F.2d 582, 586 (2d Cir.), *cert. denied,* 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533 (1942); *Delta Supply Co. v. Liberty Mutual Ins. Co.,* 211 F.Supp. 429, 430 (S.D.Tex.1962); *see also* 6 J. Appleman & J. Appleman, *supra,* § 3706 at 23 n. 89 (citing cases). It appears to this court that these courts have either misstated, or declined to apply, the common law rule that the vessel's fair market value as repaired is determinative of the constructive total loss issue.

In respect to the mode of ascertaining the value of the ship, and, of course, whether she is injured to the amount of half her value, it has, upon the fullest consideration, been held by this court that the true basis of the valuation is the value of the ship at the time of the disaster; and that, if, after the damage [to the insured vessel] is or might be repaired, the ship is not, or would not be worth, at the place of the repairs, double the cost of the repairs, it is to be treated as a technical total loss.

*Bradlie v. Maryland Insurance Co.,* 37 U.S. (12 Pet.) 378, 398–99, 9 L.Ed. 1123, 1132 (1838) (Story, J.) (*citing Patapsco Insurance Co. v. Southgate,* 30 U.S. (5 Pet.) 604, 8 L.Ed. 243 (1831); 3 Kent's Commentaries 321, 330 (n.d.)).[3] *See also Asphalt Int'l, Inc. v. Enterprise Shipping Corp., S.A.,* 667 F.2d 261, 265 (2d Cir.1981); G. Gilmore & C. Black, *supra,* at 84. The rule

at base is a legal presumption that the insured can treat the vessel as a total loss if the end result after repair is not sufficiently greater than the cost of repair itself. The insurer has the right to claim the damaged vessel after payment to the insured under the policy; the insurer can thus recoup whatever it can through sale of the ship. *Asphalt Int'l,* 667 F.2d at 265; *Lenfest v. Coldwell,* 525 F.2d 717, 724 (2d Cir.1975). Essentially, the common law rule mandates a particular allocation of risk between insurer and insured. *Asphalt Int'l,* 667 F.2d at 265; *Calmar S.S. Corp. v. Scott,* 209 F.2d 852, 854 (2d Cir.1954) (L. Hand, J.).

Of course, an insurer can contractually alter this allocation of risk by agreeing with the insured on a provision in the insurance policy to this effect. This is unobjectionable legally, and indeed, is now probably the norm in marine insurance contracts. G. Gilmore & C. Black, *supra,* at 84.[4] However, the insurance contract between State Farm and Fuller contains no such provision regarding the value to be applied in constructive total loss calculations, and hence, the general rule applies.

In its order denying summary judgment, this court found that the "clear and plain meaning" of the loss settlement provision of the policy required that both the boat and the motor, considered separately, had to be total losses before the company was obligated to pay Fuller the coverage limit. *Fuller v. State Farm Fire & Casualty Co.,* 721 F.Supp. at 1221–22. At trial, the evidence adduced suggested that in the pleasure boating industry, in-board motors are commonly considered as part of the boat itself; that is, boat and motor are considered integrated units. Out-board motors, on the other hand, are not commonly considered to be integrated into the boat.[5] Fuller's boat contained an in-board

---

**3.** As the court noted in a previous order, Alabama follows the standard rule set out in *Bradlie. See Fulton Insurance Co. v. Goodman,* 32 Ala. 108, 129 (1858).

**4.** For examples of cases in which the policy contained such language, see, e.g., *Orient Mutual Ins. Co. v. Adams,* 123 U.S. 67, 8 S.Ct. 68, 31 L.Ed. 63 (1887); *Tillery v. Hull & Co., Inc.,* 876 F.2d 1517 (11th Cir.1989).

**5.** Although no precise definition of in-board and out-board motors developed at trial, certain distinguishing characteristics were clear. The in-board motor is typically located below deck and midships. The out-board motor is typically affixed above deck at the stern. The two types of motor employ different fuel systems as well, the out-board using pressurized tanks to deliver the fuel and the in-board using a fuel pump. There

motor. He and State Farm thus may have intended the boat and motor to be considered an integrated unit for insurance purposes when they entered into the policy at hand.[6]

The court finds that the same result obtains whether the boat and motor are considered separately or as a unit. If the boat and motor are considered as a unit, the evidence establishes that the fair market value of Fuller's boat if it had been repaired when it sank would have been between $12,000 and $15,000.[7] Taking the highest value admitted by the evidence, the cost of repairs to the boat and motor as a unit, $11,180, well exceeds one-half the fair market value of the boat and motor as repaired ($7,500). The boat is a total loss under this construction of the policy.

If the boat and motor are considered separately, the cost of repair for the motor is $4,650, and the cost of repair of the boat is $6,530.[8] State Farm concedes that the motor was a total loss under the policy. The court finds that the boat was as well. The evidence established that the fair market value of the boat, excluding the motor, as repaired, was at most $7,000. Again, the cost of repair to the boat clearly exceeds one-half the value of the boat as repaired, and hence the boat is a total loss under the policy. Thus, State Farm is obligated to pay Fuller the coverage limits on his boat under either construction of the policy.

■ State Farm also contends that Fuller failed to take steps as required by the policy to protect his vessel from further damage after it sank. Specifically, State Farm urges that Fuller had a duty under the policy to subject the motor in his boat to certain preservation techniques to minimize the damage sustained in the sinking.

When metallic parts are submersed in salt water, they suffer corrosion and rust damage. An operation known as "flushing and pickling" can, in certain circumstances, reduce this damage to a motor. Fuller did not request the repair service in this case to perform this operation on his motor.

The court finds that Fuller did not violate the provision of the policy which required him to protect the property from further damage or loss. The evidence at trial established that the motor in his boat was so damaged by the time mechanics reached it that the flushing and pickling operation would not have ameliorated the damage. Corrosion had caused the motor to "lock up" before any steps could reasonably be taken to prevent the damage. Fuller acted in compliance with his contractual duties and is entitled to the relief he seeks.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiff J. Doyle Fuller and against defendant State Farm Fire & Casualty Company;

(2) That it be and it is hereby DECLARED that plaintiff J. Doyle Fuller's boat is a total loss under the terms of the contract of insurance between the parties; and

(3) That it be and it is hereby DECLARED that defendant State Farm Fire & Casualty Company is obligated to pay plaintiff Fuller the coverage limits in accordance with that contract of insurance.

---

is no dispute that Fuller's boat contained an in-board motor.

6. State Farm's pretrial position was that the boat and motor were considered separately for loss purposes under the policy. In its brief filed after the trial, however, State Farm contends that the boat and motor should be considered a unit.

7. Several witnesses also testified, however, that few buyers would be interested in purchasing a

vessel which has suffered complete immersion in salt water.

8. The undisputed evidence at trial established that a transmission is not considered part of the motor with respect to in-board motors. Thus, costs of repair relating to the transmission are correctly attributed to the boat, not the motor, for constructive total loss purposes.

It is further ORDERED that costs be and they are hereby taxed against defendant State Farm Fire & Casualty Company, for which execution may issue.